# STATE OF WEST VIRGINIA
## SUPREME COURT OF APPEALS

*In re* **A.H. and N.H.**

**No. 19-0651** (Mineral County 18-JA-24 and 18-JA-25)

**FILED**
**April 28, 2020**
EDYTHE NASH GAISER, CLERK
SUPREME COURT OF APPEALS
OF WEST VIRGINIA

## MEMORANDUM DECISION

Petitioner Father T.H., by counsel Jeremy B. Cooper, appeals the Circuit Court of Mineral County's June 25, 2019, order terminating his parental rights to A.H. and N.H.[1] The West Virginia Department of Health and Human Resources ("DHHR"), by counsel Lee A. Niezgoda, filed a response in support of the circuit court's order. The guardian ad litem ("guardian"), Meredith H. Haines, filed a response on behalf of the children in support of the circuit court's order. On appeal, petitioner argues that the circuit court erred in (1) removing the children from his home without a timely preliminary hearing; (2) untimely adjudicating him; (3) and terminating his parental rights.

This Court has considered the parties' briefs and the record on appeal. The facts and legal arguments are adequately presented, and the decisional process would not be significantly aided by oral argument. Upon consideration of the standard of review, the briefs, and the record presented, the Court finds no substantial question of law and no prejudicial error. For these reasons, a memorandum decision affirming the circuit court's order is appropriate under Rule 21 of the Rules of Appellate Procedure.

On June 12, 2018, the DHHR was granted emergency custody of the children after newborn A.H. sustained non-accidental injuries including retinal hemorrhaging, brain bleeds, and bruises on her wrists while in the care of her mother and her mother's boyfriend. After removing the children from the mother's care, the DHHR placed the children with petitioner in Maryland. During a June 14, 2018, safety check of petitioner's home, the DHHR discovered that the home was unfit and the older child had witnessed petitioner's drug abuse. The DHHR then removed the children from petitioner's home and filed an amended emergency petition to include

---

[1]Consistent with our long-standing practice in cases with sensitive facts, we use initials where necessary to protect the identities of those involved in this case. *See In re K.H.*, 235 W. Va. 254, 773 S.E.2d 20 (2015); *Melinda H. v. William R. II*, 230 W. Va. 731, 742 S.E.2d 419 (2013); *State v. Brandon B.*, 218 W. Va. 324, 624 S.E.2d 761 (2005); *State v. Edward Charles L.*, 183 W. Va. 641, 398 S.E.2d 123 (1990).

the above allegations against petitioner on June 21, 2018. After a delay due to changes in venue, the circuit court held a contested preliminary hearing upon the amended emergency petition as to all respondent parents on September 5, 2018. Ultimately, the circuit court found probable cause to believe that the children were abused and/or neglected.

An adjudicatory hearing was held in October of 2018. The mother's boyfriend moved for a continuance to allow him time to locate and retain a medical expert. Petitioner did not object to the continuance, and the circuit court granted the motion. The next hearing was held in November of 2018, during which the mother's boyfriend moved for a sixty-day continuance to allow his retained expert to review the case. Petitioner did not object to the continuance, and the circuit court granted the motion. In January of 2019, petitioner moved the circuit court to set an adjudicatory hearing. When the circuit court set the hearing for March of 2019, petitioner did not object. On February 12, 2019, petitioner attended a multidisciplinary team ("MDT") meeting and agreed to stipulate to inadequate housing and substance abuse. In return, the DHHR agreed to recommend an improvement period requiring petitioner to participate in individualized parenting classes, adult life skills classes, substance abuse counseling, regular drug testing, and supervised visitations. Thereafter, the DHHR filed the case plan memorializing the above agreement on February 28, 2019, in preparation for petitioner's adjudicatory hearing in March of 2019.

At the March hearing, the circuit court terminated the mother's parental rights to the children and proceeded with petitioner's adjudication. The circuit court noted the MDT's agreement and stated that it would accept the proposed case plan and petitioner's stipulations once they were filed. The circuit court then ordered petitioner to participate in adult life skills classes and individualized parenting classes, in addition to gaining and keeping stable employment and adequate housing. By the next hearing in early April of 2019, petitioner still had not stipulated, and the guardian opposed accepting any proposed stipulations and granting petitioner an improvement period because he had not been compliant with services. The circuit court held another hearing on April 18, 2019, to adjudicate petitioner, but he again failed to file his written stipulations. Finally, petitioner filed his written stipulations on May 30, 2019, wherein he stipulated to inadequate housing and substance abuse and confirmed that his stipulations were made knowingly, voluntarily, and intelligently.

On May 31, 2019, the circuit court held a hearing and stated that it had accepted petitioner's filed stipulations. The guardian and the DHHR objected to petitioner's request for an improvement period arguing that petitioner had not been compliant with drug testing, refused to allow the DHHR and the guardian access to his home for a safety check, and made no progress in any other services. The DHHR argued that petitioner already had a case plan and services available to him, but he failed to participate in those services. The guardian moved the circuit court to set the matter for disposition. Petitioner argued that he was promised an improvement period and that the parties only needed to sign a new case plan. The circuit court then granted the guardian's motion to set the matter for disposition.

In June of 2019, the circuit court held the final dispositional hearing. The DHHR presented evidence that petitioner failed to comply with services and was discharged from his in-home services for his lack of motivation, cooperation, and participation in adult life skills and parenting classes. The DHHR worker testified that petitioner tested positive for

methamphetamine and marijuana and had not submitted to drug screening since April 18, 2019, except for one instance where he tested positive for methamphetamine, amphetamine, and marijuana after the May 31, 2019, hearing. The DHHR worker also testified that petitioner refused access to the DHHR to evaluate his home. Petitioner argued that he was sick on the date the MDT members wanted to do a home visit and denied using methamphetamine despite his positive drug results. He further blamed his lack of transportation or a miscommunication with the DHHR for his failure to regularly submit to drug screening. Petitioner testified that he did not know his home address and was not employed. At the conclusion of the hearing, the circuit court ordered petitioner to submit to a drug screen, and petitioner tested positive for methamphetamine, amphetamine, and marijuana.

Ultimately, the circuit court found that petitioner was addicted to drugs, exposed the children to his drug abuse, and failed to maintain a "safe and sanitary home environment." Accordingly, the circuit court found that there was no reasonable likelihood petitioner could correct the conditions of abuse and neglect in the near future and that termination of petitioner's parental rights was necessary for the children's welfare. The circuit court memorialized its decision in its June 25, 2019, order. Petitioner now appeals that order.[2]

The Court has previously established the following standard of review:

"Although conclusions of law reached by a circuit court are subject to *de novo* review, when an action, such as an abuse and neglect case, is tried upon the facts without a jury, the circuit court shall make a determination based upon the evidence and shall make findings of fact and conclusions of law as to whether such child is abused or neglected. These findings shall not be set aside by a reviewing court unless clearly erroneous. A finding is clearly erroneous when, although there is evidence to support the finding, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed. However, a reviewing court may not overturn a finding simply because it would have decided the case differently, and it must affirm a finding if the circuit court's account of the evidence is plausible in light of the record viewed in its entirety." Syl. Pt. 1, *In Interest of Tiffany Marie S.*, 196 W.Va. 223, 470 S.E.2d 177 (1996).

Syl. Pt. 1, *In re Cecil T.*, 228 W.Va. 89, 717 S.E.2d 873 (2011). Upon our review, this Court finds no error in the proceedings below.

On appeal, petitioner first asserts that his due process "rights were violated when the children were removed from his care without a hearing being held on the removal for well in

---

[2]The mother's parental rights were also terminated below. According to respondents, the permanency plan is for the children to be adopted in their relative foster placement.

excess of two months."[3] According to the record, the circuit court delayed petitioner's preliminary hearing by approximately fifty-eight days when taking into account the changes in venue and the date of the filing of the amended petition. Petitioner claims this is in direct contradiction to Rule 22(a) of the West Virginia Rules of Procedure for Child Abuse and Neglect Proceedings, which requires a preliminary hearing on emergency custody of the children to be "initiated within ten (10) days after the continuation or transfer of [such] custody" by the DHHR. According to petitioner, this violated his due process rights. We disagree.

Simply put, petitioner was in no way prejudiced by the circuit court's delay in holding his preliminary hearing. Petitioner fails to prove that if the circuit court had held a preliminary hearing sooner, then the children would have been returned to his custody. Indeed, the record shows that the children were placed in imminent danger in petitioner's care as his filthy, cluttered home contained drug paraphernalia, lacked beds and other necessary items for the children's care, and exposed the children to drug abuse. In fact, petitioner does not deny these allegations or argue that the circuit court erred in removing the children from his home because it was safe and appropriate or that the older child was mistaken when she reported petitioner's drug abuse to the DHHR worker. The circuit court, having reviewed the facts of the matter, found the children's removal to be in their best interests. "'In a contest involving the custody of an infant[,] the welfare of the child is the polar star by which the discretion of the court will be guided.' Syl. Pt. 2, *State ex rel. Lipscomb v. Joplin*, 131 W.Va. 302, 47 S.E.2d 221 (1948)." Syl. Pt. 3, *In re S.W.*, 233 W. Va. 91, 755 S.E.2d 8 (2014). Thus, petitioner cannot establish that the circuit court's delayed ratification of the children's removal from his unsafe home in any way affected a possible return of the children to his custody. We have previously held that

> "[w]here it appears from the record that the process established by the Rules of Procedure for Child Abuse and Neglect Proceedings and related statutes for the disposition of cases involving children [alleged] to be abused or neglected has been substantially disregarded or frustrated, the resulting order . . . will be vacated and the case remanded for compliance with that process and entry of an appropriate . . . order." Syllabus point 5, in part, *In re Edward B.*, 210 W.Va. 621, 558 S.E.2d 620 (2001).

Syl. Pt. 3, *In re Emily G.*, 224 W. Va. 390, 686 S.E.2d 41 (2009). Given the imminent danger faced by the children while in petitioner's care, we find, under these limited circumstances of

---

[3]According to the record, at the hearing on June 21, 2018, the mother testified that she and the children had lived in Hampshire County, West Virginia, and A.H. sustained injuries in that county. As a result, the circuit court found venue improper in Mineral County and transferred the matter to the Circuit Court of Hampshire County, West Virginia, thus delaying petitioner's preliminary hearing. However, the two circuit courts later conferred and agreed that venue was proper in Mineral County, West Virginia. The matter was returned to the Circuit Court of Mineral County by order entered on July 9, 2018. Therefore, the soonest that the circuit court could have held a preliminary hearing was after July 9, 2018, which was more than ten days after the amended petition's filing date of June 21, 2018.

4

this particular case, that the circuit court's failure to timely hold petitioner's preliminary hearing upon the amended petition does not constitute such a disregard or frustration of the applicable rules and statutes that vacation of the dispositional order is warranted. Petitioner has established no error upon which this Court would grant relief or otherwise order the children be returned to his care. As such, petitioner is entitled to no relief.

Petitioner next argues that the circuit court erred in adjudicating him in a "grossly untimely manner" and that he was prejudiced by the delay because he was "heavily criticized, and ultimately denied an improvement period, based in large part on his post-petition conduct." We disagree and find that petitioner is entitled to no relief.

Pursuant to Rule 25 of the West Virginia Rules of Procedure for Child Abuse and Neglect Proceedings, an adjudicatory hearing must be held within thirty days after the entry of a temporary custody order. Here, the temporary custody order was entered on September 12, 2018, and the circuit court set the matter for an adjudicatory hearing on October 29, 2018—to which petitioner did not object. At the October of 2018 hearing, petitioner failed to object to another respondent's motion to continue. Petitioner also failed to object to the continuance at the next hearing in November of 2018. It was not until January of 2019 that petitioner requested the circuit court to set his adjudicatory hearing, and he did not object when the circuit court set the matter for March of 2019. At the MDT meeting in February of 2019, petitioner agreed to file stipulations, yet failed to present them to the circuit court at the March hearing. Petitioner again failed to present his stipulations at the two hearings set in April of 2019. Petitioner finally filed his written stipulations on May 30, 2019—approximately eight months after the entry of the circuit court's initial order.

As evidenced above, petitioner either actively contributed to the delays in holding an adjudicatory hearing or clearly failed to object to the continuances requested by other parties, thereby, waiving the issue. This Court has held that

> [w]hen a litigant deems himself or herself aggrieved by what he or she considers to be an important occurrence in the court of a trial or an erroneous ruling by a trial court, he or she ordinarily must object then and there or forfeit any right to complain at a later time. The pedigree for this rule is of ancient vintage, and it is premised on the notion that calling an error to the trial court's attention affords an opportunity to correct the problem before irreparable harm occurs.

*State v. LaRock*, 196 W. Va. 294, 316, 470 S.E.2d 613, 635 (1996). Nonetheless, contrary to petitioner's argument that the circuit court disregarded the applicable time frames for abuse and neglect proceedings, the record is clear that good cause existed for the delays below, as the other respondent parents needed time to attain a medical expert to contest the alleged non-accidental injuries to the child. Further, as noted above, petitioner contributed to the delay by failing or refusing to file his written stipulations for nearly three months. The record is clear that the circuit court timely rescheduled every hearing. Given petitioner's failure to object, coupled with his contribution to the delay, we find that he is entitled to no relief in this regard.

Lastly, petitioner argues that the circuit court erred in terminating his parental rights because he was "induced into a stipulated adjudication, without a knowing waiver of rights, by the promise of an improvement period, which was not ultimately granted." Petitioner argues that he was "essentially penalized for not hewing to the requirements of an improvement period without ever getting the benefits of an improvement period in the first place." Petitioner blames the circuit court's lack of a clear timeframe for his inability to improve his living arrangements and address his substance abuse addiction. We disagree and find this argument unpersuasive on appeal.

Rule 26 of the West Virginia Rules of Procedure for Child Abuse and Neglect Proceedings provides that

> [a]ny stipulated or uncontested adjudication shall include the following information:
>
> (1) Agreed upon facts supporting court involvement regarding the respondent's problems, conduct, or condition; and
>
> (2) A statement of respondent's problems or deficiencies to be addressed at the final disposition.
>
> Before accepting a stipulated or uncontested adjudication, the court shall determine that the parties understand the content and consequences of the admission or stipulation, the parties voluntarily consent, and that the stipulation or uncontested adjudication meets the purposes of these rules and controlling statute and is in the best interests of the child.

While the circuit court did not require petitioner's testimony concerning his stipulations, it required that the written stipulations be filed with the circuit court and satisfy the requirements of Rule 26. Petitioner's stipulations had a precise statement regarding the allegations that he was stipulating to; a statement affirming that those stipulations were made knowingly, voluntarily, and intelligently; a statement that petitioner understood the consequences of entering such stipulations; and a statement that the stipulations were made in the best interests of the children. Notably, petitioner's stipulations also stated that he would "participate in all services suggested to him by the MDT." Therefore, we find that the circuit court did not err in accepting petitioner's written stipulations as they complied with Rule 26 of the West Virginia Rules of Procedure for Child Abuse and Neglect Proceedings.

We likewise find no merit to petitioner's disingenuous argument that he would not have entered into his stipulation without the promise of an improvement period. Admittedly, the record is unclear as to whether the circuit court formally granted petitioner a post-adjudicatory improvement period. However, the record indicates that the circuit court ordered the DHHR to provide services to petitioner around March of 2019. Such services consisted of supervised visitations, random drug screening, individualized parenting classes, and adult life skills classes—the same services that the DHHR agreed to provide during petitioner's proposed improvement period. The circuit court further ordered petitioner to seek appropriate housing and stable employment. As such, and especially considering these services were included in

petitioner's formal case plan, petitioner had clear direction as to how to address his issues of inadequate housing and substance abuse but failed to follow through with any remedial services. *See* Syl. Pt. 2, *In re Desarae M.*, 214 W. Va. 657, 591 S.E.2d 215 (2003) (holding that the purpose of a family case plan is to "clearly set forth an organized, realistic method of identifying family problems and the logical steps to be used in resolving or lessening [such] problems"). Because the services were offered, and because an improvement period would have allowed for the provision of those exact same services for which petitioner failed to follow through, we find that petitioner is entitled to no relief in this regard.

We conclude by finding no error in the circuit court's termination of petitioner's parental rights. West Virginia Code § 49-4-604(b)(6) provides that a circuit court may terminate parental rights upon findings that "there is no reasonable likelihood that the conditions of neglect or abuse can be substantially corrected in the near future" and that termination is necessary for the welfare of the children. West Virginia Code § 49-4-604(c)(3) provides that there is no reasonable likelihood that the conditions of abuse and neglect can be substantially corrected when "[t]he abusing parent . . . [has] not responded to or followed through with a reasonable family case plan or other rehabilitative efforts of social, medical, mental health or other rehabilitative agencies designed to reduce or prevent the abuse or neglect of the child[ren]." Despite the services offered to him, petitioner made no effort to remedy his conduct by completing individualized parenting classes, adult life skills classes, or substance abuse counseling. Petitioner admitted that he failed to comply with drug screening, had not obtained employment, and had not obtained suitable housing. Further, petitioner denied using methamphetamine, despite testing positive on the drug screens, and failed to grasp the severity of his drug addiction. We have held that

> [i]n order to remedy the abuse and/or neglect problem, the problem must first be acknowledged. Failure to acknowledge the existence of the problem, i.e., the truth of the basic allegation pertaining to the alleged abuse and neglect or the perpetrator of said abuse and neglect, results in making the problem untreatable.

*In re Timber M.*, 231 W. Va. 44, 55, 743 S.E.2d 352, 363 (2013) (citation omitted). Petitioner's failure to comply with any services throughout the case, as well as his positive drug screen on the day of the final dispositional hearing, supports the circuit court's finding that there was no reasonable likelihood that the conditions of abuse and neglect could be substantially corrected in the near future and that termination of petitioner's parental rights was necessary for the children's welfare. Accordingly, we find no error in the termination of petitioner's parental rights.

For the foregoing reasons, we find no error in the decision of the circuit court, and its June 25, 2019, order is hereby affirmed.

Affirmed.

**ISSUED**:   April 28, 2020


**CONCURRED IN BY**:

Chief Justice Tim Armstead
Justice Margaret L. Workman
Justice Elizabeth D. Walker
Justice Evan H. Jenkins
Justice John A. Hutchison