**STATE OF WEST VIRGINIA**
**SUPREME COURT OF APPEALS**

*In re* **A.F. and E.F.**

**No. 21-0236** (Monongalia County 19-JA-206 and 19-JA-207)

**MEMORANDUM DECISION**

Petitioner Mother B.W., by counsel Elizabeth B. Warnick, appeals the Circuit Court of Monongalia County's March 3, 2021, order terminating her parental rights to A.F. and E.F.[1] The West Virginia Department of Health and Human Resources ("DHHR"), by counsel Patrick Morrisey and Lee Niezgoda, filed a response in support of the circuit court's order. The guardian ad litem ("guardian"), Natalie J. Sal, filed a response on behalf of the children in support of the circuit court's order and a supplemental appendix. On appeal, petitioner argues that the circuit court erred in denying her motion for a post-dispositional improvement period.[2]

This Court has considered the parties' briefs and the record on appeal. The facts and legal arguments are adequately presented, and the decisional process would not be significantly aided by oral argument. Upon consideration of the standard of review, the briefs, and the record presented, the Court finds no substantial question of law and no prejudicial error. For these reasons, a memorandum decision affirming the circuit court's order is appropriate under Rule 21 of the Rules of Appellate Procedure.

In November of 2019, the DHHR filed a child abuse and neglect petition alleging that petitioner engaged in criminal activity and abused drugs, which impaired her ability to parent then-five-year-old twins E.F. and A.F. When interviewed by a Child Protective Services ("CPS") worker, petitioner stated that she was arrested and charged with possession of cocaine in October of 2019, and further admitted to abusing marijuana and cocaine prior to her arrest. The children disclosed being locked in the attic when petitioner had friends over to "do grown up stuff." The CPS worker interviewed the Drug Task Force Officer who was investigating petitioner's criminal

---

[1]Consistent with our long-standing practice in cases with sensitive facts, we use initials where necessary to protect the identities of those involved in this case. *See In re K.H.*, 235 W. Va. 254, 773 S.E.2d 20 (2015); *Melinda H. v. William R. II*, 230 W. Va. 731, 742 S.E.2d 419 (2013); *State v. Brandon B.*, 218 W. Va. 324, 624 S.E.2d 761 (2005); *State v. Edward Charles L.*, 183 W. Va. 641, 398 S.E.2d 123 (1990).

[2]Petitioner does not assign as error the termination of her parental rights, and, therefore, the circuit court's ruling terminating her parental rights will not be addressed on appeal.

case, and he explained that petitioner was not charged with possession of a controlled substance. Rather, petitioner was charged with the felonies of conspiracy and possession with the intent to distribute a controlled substance after law enforcement officers discovered over fifty grams of cocaine, scales, packaging materials, and multiple loaded firearms in petitioner's home. Afterwards, the worker questioned petitioner about her criminal charges, and petitioner admitted to stealing large amounts of cocaine to sell. When the worker told petitioner that the children were being removed from her custody and placed with the nonabusing father, petitioner responded that she was not going to cooperate with services, did not care that the children were taken, and was going "to use every day now." Finally, petitioner refused to give the worker an address so the worker could start services. The DHHR concluded that petitioner's substance abuse negatively impacted her ability to parent and that she failed to provide a safe and suitable living environment for the children.

The DHHR submitted a court summary in December of 2019 stating that petitioner had been exercising supervised visitations with the children and attending parenting and adult life skills sessions. The circuit court held an adjudicatory hearing on December 9, 2019, during which petitioner stipulated that her substance abuse negatively impacted her ability to parent the children. Petitioner submitted to a drug screen after the hearing and tested positive for cocaine and marijuana. On December 10, 2019, petitioner entered a twenty-eight-day drug rehabilitation program and completed the program in January of 2020. Thereafter, the DHHR submitted a court summary stating that petitioner presented her completion of drug treatment certificate to the DHHR worker and demanded that the children be returned to her care. The DHHR worker explained that "this is a process," that the children were in their father's care, and that any future parenting arrangement would be shared parenting plans between petitioner and the father. Petitioner became irate and claimed that another woman was raising the children, referring to the father's wife, and that she should have never stipulated at the adjudicatory hearing. Petitioner also denied that the children were abused because she never abused drugs in their presence. The summary also indicated that petitioner had moved to Ohio and had failed to submit to drug screens five times since completing the drug rehabilitation program.

In February of 2020, the circuit court granted petitioner a post-adjudicatory improvement period, the terms of which required petitioner to cooperate in developing the family case plan; complete adult life skills and parenting education classes; attend supervised visits, hearings, and multidisciplinary team ("MDT") meetings; maintain sobriety; and submit to regular drug screens. The court also ordered that the children undergo counseling. Also, in February of 2020, petitioner tested positive for cocaine, alcohol, and marijuana. In March of 2020, petitioner failed to submit to most drug screens and tested positive for marijuana on one drug screen.

The DHHR submitted a court summary in September of 2020 stating that the MDT agreed that petitioner would move into a sober living facility in Morgantown, West Virginia, but petitioner instead obtained housing in Cleveland, Ohio. The summary also indicated that petitioner became noncompliant with parenting and adult life skills sessions in February of 2020; tested positive for cocaine and marijuana in June and July of 2020; and contacted a DHHR worker at the end of July of 2020, stating that she no longer wished to participate in any services. The summary listed multiple instances of petitioner missing or cancelling appointments and not staying in contact with providers. That same month, petitioner moved for an extension to her post-adjudicatory

2

improvement period, citing her purchase of a home in Ohio and stable employment. Petitioner also stated that she was seeking out "educational opportunities, counseling, and substance abuse treatment services" in Ohio.

At the review hearing held in September of 2020, the DHHR and the guardian opposed petitioner's motion for an extension to her improvement period, citing her noncompliance with drug screening since March of 2020 and that other services had been terminated due to lack of participation. Petitioner testified that she lived in Ohio and wanted more time to "get her life sorted." The court denied the extension finding that petitioner had not "demonstrated any likelihood of compliance" and stated that the "improvement period ha[d] technically been terminated." However, the court encouraged petitioner to make progress and present proof of that progress at the dispositional hearing. After the hearing, petitioner tested positive for cocaine, marijuana, and alcohol.

In December of 2020, the guardian submitted a comprehensive report recommending the termination of petitioner's parental rights. According to the guardian, petitioner blamed the father and expressed anger at MDT meetings because her visitations were supervised. Also, petitioner told the MDT members that she was attending therapy in Ohio but merely gave contact information for several different providers without providing evidence of any confirmed treatment. The guardian reported that in January of 2020, petitioner was charged with breaking and entering and grand larceny, and that those charges were pending along with the charges for conspiracy and possession with the intent to distribute a controlled substance from October of 2019. The guardian further expressed concerns that the children had divulged instances of trauma during therapy. According to the guardian, the children did not wish to see petitioner again and referred to their stepmother as "mom."

Thereafter, counsel for the father filed discovery containing a criminal complaint showing that on January 8, 2021, petitioner was charged with destruction of property, battery, obstructing an officer, trespass, and disorderly conduct after attacking a friend in Morgantown. The complaint further stated that petitioner attempted to kick out the windows of the police officer's cruiser and the officer sprayed her with mace.

In February of 2021, petitioner filed a motion for a post-dispositional improvement period, citing her recent enrollment in a long-term inpatient drug rehabilitation program, as a term of her criminal bond. That same month, the circuit court held final dispositional hearings. The court first denied petitioner's motion for a post-dispositional improvement period, finding that while petitioner was to be commended for obtaining inpatient drug treatment, she had only done so a few days before the final dispositional hearing. The court recalled that it encouraged petitioner to follow the MDT's recommendations, which included inpatient drug treatment at the September of 2020 hearing, yet petitioner waited nearly five months before enrolling. In light of this, the court found that petitioner had failed to prove the "necessary elements to verify that she would be successful" in another improvement period.

Next, the guardian presented the testimony of a licensed clinical psychologist and therapist who had been treating the children with trauma therapy since May of 2020. The therapist stated that E.F. disclosed witnessing domestic violence, adults using drugs, physical fights, arguments,

3

and guns, and that he remembered being locked in a room and worrying that he would not have food. E.F. also disclosed a specific instance where petitioner choked and slammed him into a couch and called him a "little bitch." A.F. made similar disclosures and when asked about guns, he stated that he did not want to talk about it because "it brings up all the bad stuff." The therapist explained that this disassociation is uncommon and only seen in children who have experienced higher levels of trauma. Both children disclosed seeing petitioner attempt to stab someone with a pair of scissors. The therapist diagnosed the children with post-traumatic stress disorder ("PTSD"), and opined that they would need specialized parenting and a very stable home. When asked about the effect exposing them to petitioner would have, she stated that both children were very scared of petitioner and did not see petitioner as a safe and protective parent. They each individually begged not to have any in-person visits with petitioner. The therapist also noted that when petitioner previously exercised visits, the children experienced increased nightmares and other disruptive behaviors, such as bedwetting. In her professional opinion, any future contact with petitioner would be detrimental to the children and the children should remain completely in the safe and stable environment of the father's home. She stated that allowing petitioner the ability to come in and out of their lives would hold a "fear of what if over their head[s]" and disturb their stability.

The CPS worker testified that the DHHR's case plan recommended the termination of petitioner's parental rights, but in her personal opinion, in light of petitioner's recent admission into an inpatient drug program, the court should grant a post-dispositional improvement period. On cross-examination by the guardian, the worker explained that she was newly assigned to the case and admitted that two days prior, she had stated that the DHHR's position was that petitioner's parental rights should be terminated. Later in the hearing, counsel for the DHHR proffered that it did not oppose a short post-dispositional improvement period.

Petitioner testified that prior to the petition's filing, she and the father exercised shared parenting since October of 2018, where she only had physical custody of the children every other weekend. She stated that after she completed the first twenty-eight-day inpatient drug rehabilitation program, she failed to take advantage of support services such as narcotics anonymous meetings and therapy, and immediately relapsed. She explained that after her first arrest in October of 2019, she moved to Ohio. While living there, she sought out therapy and mental health services, and completed some therapy sessions and outpatient treatment. Petitioner stated that she came back to Morgantown on January 8, 2021, and was arrested after a night of drinking heavily with friends. She also stated that she had failed to take her prescriptions for anxiety, depression, and bipolar disorder at that time. After the arrest, petitioner was released on bond on January 26, 2021, and entered into an inpatient drug rehabilitation program. She stated that upon completion of that program, she would enter a sober living facility. Petitioner took full responsibility for her failures during her improvement period and stated that she was in a better position to address her addiction. On cross-examination, petitioner denied locking the children in a room, but conceded that she could not remember if the other violent situations occurred. She further admitted that she had not provided a single clean drug screen during the pendency of the case and had missed most drug screens.

Finally, a service provider testified that petitioner had been largely noncompliant with services and explained the difficulties of providing services to petitioner while she lived in Ohio. The provider discussed housing options and other resources in the Morgantown area with

petitioner, but petitioner remained in Ohio until January of 2021. Additionally, she stated that petitioner consistently told her that she was sober and did not need addiction services. Further, she explained that despite many sessions being moved to online platforms during COVID-19 lockdowns, petitioner still failed to attend most sessions.

Based on the evidence, the circuit court found that petitioner's improvement period was unsuccessful and, thus, a post-dispositional improvement period was not warranted. In support, the court cited petitioner's failure to comply with drug screening and her continued drug abuse. The court noted that petitioner's violent behaviors reported by the children were exhibited less than a month prior to the hearing, resulting in petitioner's arrest and four new criminal charges. The court recognized that petitioner "said all of the right things" but was skeptical of her intentions. The court addressed the children's need for permanency and that although they were not in foster care, the case had been pending for nearly fifteen months and petitioner's improvement period had lasted more than a year without substantial progress. Accordingly, the circuit court found that there was no reasonable likelihood that petitioner could correct the conditions of abuse and neglect in the near future and that termination of her parental rights was necessary for the children's welfare. The circuit court terminated petitioner's parental rights by order entered on March 3, 2021.[3] It is from the dispositional order that petitioner appeals.

The Court has previously established the following standard of review:

> "Although conclusions of law reached by a circuit court are subject to *de novo* review, when an action, such as an abuse and neglect case, is tried upon the facts without a jury, the circuit court shall make a determination based upon the evidence and shall make findings of fact and conclusions of law as to whether such child is abused or neglected. These findings shall not be set aside by a reviewing court unless clearly erroneous. A finding is clearly erroneous when, although there is evidence to support the finding, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed. However, a reviewing court may not overturn a finding simply because it would have decided the case differently, and it must affirm a finding if the circuit court's account of the evidence is plausible in light of the record viewed in its entirety." Syl. Pt. 1, *In Interest of Tiffany Marie S.*, 196 W.Va. 223, 470 S.E.2d 177 (1996).

Syl. Pt. 1, *In re Cecil T.*, 228 W. Va. 89, 717 S.E.2d 873 (2011).

On appeal, petitioner argues that the circuit court erred in denying her a post-dispositional improvement period.[4] According to petitioner, evidence of her "participation, motivation, and aftercare plans for her substance abuse treatment and mental health treatment was abundant." Also, petitioner relies on the fact that the DHHR did not oppose her motion. Petitioner contends that in denying her motion, the circuit court failed to analyze and give weight to petitioner's change

---

[3]The father was nonabusing, and the children have achieved permanency in his care.

[4]In her brief to this Court, petitioner lists two separate, but closely related, assignments of error. In addressing this appeal, we have combined these assignments into a single discussion.

5

in circumstances and instead focused only on whether the conditions of abuse and neglect had been adequately improved during petitioner's post-adjudicatory improvement period. Petitioner contends that the evidence presented at the dispositional hearing proved that she was likely to fully participate in the terms and conditions of another improvement period. Finally, petitioner argues that the granting of a post-dispositional improvement period would not have delayed the children's permanency as they were living with their father.

According to West Virginia Code § 49-4-610(3)(D), in order to obtain a post-dispositional improvement period after having already been granted an improvement period, a parent must first "demonstrate[] that since the initial improvement period, [she] has experienced a substantial change in circumstances" and "that due to that change in circumstances, [she] is likely to fully participate in the improvement period." Therefore, the circuit court correctly considered petitioner's progress and compliance during her nearly one year of a post-adjudicatory improvement period to see if petitioner would comply with another improvement period. This Court has held that

> [a]t the conclusion of the improvement period, the court shall review the performance of the parents in attempting to attain the goals of the improvement period and shall, in the court's discretion, determine whether the conditions of the improvement period have been satisfied and whether sufficient improvement has been made in the context of all the circumstances of the case to justify the return of the child.

Syl. Pt. 6, *In Interest of Carlita B.*, 185 W. Va. 613, 408 S.E.2d 365 (1991). Here, the record shows that the circuit court made this determination when it denied petitioner's motion for an extension to her post-adjudicatory improvement period during the September of 2020 hearing as it found that petitioner had not substantially complied with its terms and conditions. Notably, at that hearing, the court encouraged petitioner to follow the MDT's recommendations, which included inpatient drug treatment, so that she could present evidence of compliance and progress at the dispositional hearing. Despite several continuances resulting in a de facto extension of her improvement period, petitioner failed to obtain inpatient drug treatment for nearly five months and only did so when faced with the termination of her parental rights. Furthermore, the record shows that the catalyst for petitioner's enrollment in the inpatient drug treatment was a third arrest and resultant criminal bond. While it is true that petitioner was initially compliant with the terms and conditions of her improvement period prior to her first relapse around January of 2020, petitioner ignores the fact that she was largely noncompliant for the remainder of the proceedings. Ample evidence supports this finding as she failed to regularly drug screen and when she did submit a screen, it was positive for cocaine and marijuana. Further, although petitioner cooperated initially with parenting and adult life skills classes, she never completed the courses despite the ability to attend remotely. Here, we find no abuse of discretion in the circuit court's determination that petitioner was unsuccessful in sufficiently improving the conditions of abuse and neglect as well as being unlikely to comply with the terms and conditions of another improvement period.

Further, the record is abundantly clear that petitioner did not experience a substantial change in circumstances. Petitioner argues that her recent admission in inpatient drug treatment as required by her criminal bond constituted a change in circumstances, but the circuit court did not

6

believe that petitioner would remain compliant with the program and was not genuine. This is a determination we decline to disturb on appeal. *Michael D.C. v. Wanda L.C.*, 201 W. Va. 381, 388, 497 S.E.2d 531, 538 (1997) ("A reviewing court cannot assess witness credibility through a record. The trier of fact is uniquely situated to make such determinations and this Court is not in a position to, and will not, second guess such determinations."). Furthermore, the circuit court considered petitioner's multiple pending criminal charges, the possibility of her incarceration, and her resultant inability to participate in drug treatment and other services.

Finally, regarding petitioner's argument that the children's permanency would not be delayed or impacted by the granting of a post-dispositional improvement period, we find that petitioner fails to consider the best interest of the children. The children's therapist testified in depth about the impact petitioner's violent behaviors and drug abuse had on them, and that the children now suffered from PTSD as a result. The children, although young, both expressed a fear of petitioner and wished not to have contact with her. Finally, the therapist opined that future contact with petitioner would be detrimental and that allowing petitioner the ability to come back into their lives was a perceived threat hanging over the children's heads. Despite petitioner's argument that the children had achieved permanency with the father, the children had not achieved stability as the children's future relationship and contact with petitioner remained uncertain. "'In a contest involving the custody of an infant the welfare of the child is the polar star by which the discretion of the court will be guided.' Syl. Pt. 2, *State ex rel. Lipscomb v. Joplin*, 131 W.Va. 302, 47 S.E.2d 221 (1948)." Syl. Pt. 3, *In re S.W.*, 233 W. Va. 91, 755 S.E.2d 8 (2014). Below, the circuit court clearly considered the children's best interest when denying petitioner's motion for a post-dispositional improvement period, and we find not error in this regard. Upon review of the record, it is clear that the circuit court was presented with sufficient evidence upon which to deny petitioner a post-dispositional improvement period and proceed with the termination of her parental rights.

For the foregoing reasons, we find no error in the decision of the circuit court, and its March 3, 2021, order is hereby affirmed.

Affirmed.

**ISSUED**: November 8, 2021

**CONCURRED IN BY**:

Chief Justice Evan H. Jenkins
Justice Elizabeth D. Walker
Justice Tim Armstead
Justice John A. Hutchison
Justice William R. Wooton