State *ex rel.* Cynthia Ellen Lipscomb

*v.*

Ruth Joplin, *et al.*

(No. 10034)

Submitted February 24, 1948. Decided March 16, 1948.

*Atkinson & Alderson,* for petitioner.

*Dennis R. Knapp,* for respondents.

HAYMOND, JUDGE:

In this original proceeding in habeas corpus instituted by the State at the relation of Cynthia Ellen Lipscomb, the relator seeks to recover the possession of her four months old daughter, Barbara Ann, from the respondents, Ruth Joplin and Denver Joplin, a married couple, into whose custody she delivered the child on November 3, 1947, when it was twenty days old. Upon the petition a writ was awarded on February 2, 1948, returnable before this Court on February 10, 1948. In obedience to the writ

the respondents appeared on the day to which it was returnable, produced the child in court, and filed their motion to quash the writ. At the same time they filed their return. To the return the relator filed a replication and a demurrer. On her motion, and without objection by the respondents, the proceeding was continued until February 24, 1948, to enable the respective parties to introduce evidence in the form of depositions. At that time the case was submitted for decision upon the original and amended pleadings, the depositions filed in behalf of the respective parties, and the written briefs of counsel.

The relator, Cynthia Ellen Lipscomb, the mother of the child, is the wife of Eric Lipscomb. She is thirty seven years of age, is a resident of Kanawha County, West Virginia, and has never had any other children. Until she entered a Charleston hospital on October 14, 1947, where, on that day, she gave birth to the child, she had lived with her husband since their marriage in 1934. While she was at the hospital, where she says he visited her on occasions when he was drinking, a dispute arose between them concerning the paternity of the child. She states that he is its father but she admits that he told her at the hospital that he was not the father of the child and in his testimony, which was given in behalf of the respondents, he emphatically denies that the baby is his child. On October 21, 1947, at his direction, she went with the child, which was then one week old, to the home of her husband's married sister, a Mrs. Naylor, in Quick, Kanawha County, about two miles from her former home at Elkview in that county. She stayed with Mrs. Naylor whom her husband paid to care for her and the baby until she went, on the Sunday before Thanksgiving, 1947, to reside with her brother and his wife, who live comfortably and are financially well to do, at Quick, in Kanawha County, and since that time she has made her home with them at that place.

The relator and her husband have been separated and have not lived together since she entered the hospital on October 14, 1947. After their separation, he instituted a suit for divorce against her which is pending in the Cir-

cuit Court of Kanawha County and in which, on February 3, 1948, an order was entered, to which he consented, by which he is required to pay her the sum of $15.00 per week for her support. She has no home of her own but says, and her brother with whom she is now making her home and his wife corroborate her, that she and the child have permission to make their home with him and that he will assist her in rearing and caring for it properly. She owns an undivided one eleventh interest, estimated to be worth from $5,000.00 to $8,000.00, in land containing about one hundred acres in Kanawha County which she inherited from her father, and from which she receives, in the form of oil and gas delay rentals, income of approximately $30.00 per month. Other than this rental and the payments of $15.00 per week which her husband is required to pay by court order, she has no income.

While the relator was staying at Mrs. Naylor's home in Quick, the respondents Ruth Joplin and Denver Joplin, strangers to her but acquaintances of Mrs. Naylor, learned from Ruth Joplin's father, who came there daily and who worked nearby, of the presence of the baby in the Naylor home. Ruth Joplin, the wife of Denver Joplin, having been informed that she could not have children of her own, was desirous of adopting a child, and also having heard that the relator intended to place the baby in some institution, came to the Naylor home to see the child and talk to the relator about taking it to her home. She saw the child on November 2, 1947, and on the following day the relator permitted her to have the custody of the child which she took to her home in Poca, Putnam County.

After the relator permitted Ruth Joplin to take the child on November 3, 1947, she did not inquire about it or call on the Joplins until December 30, 1947, at which time she came to the Joplin home at night and demanded that they return the child to her custody. Her demand was refused and this proceeding resulted.

With respect to the character of the custody of the child, whether it was intended to be temporary or permanent,

at the time the relator permitted Ruth Joplin to take the baby on November 3, 1947, the evidence is conflicting. The relator insists that she permitted Ruth Joplin to have temporary custody of the child, to continue only until she was able to care for it. She does not, however, undertake to say how long the temporary custody was to last or to determine when she would be able to look after the baby. She denies statements, attributed to her and testified to by a number of witnesses, that she hated the child, that she did not want to keep it, that her husband was not its father, and that another man, whom she named and said she hated, was its father. When asked on cross-examination if a designated man other than her husband, or her husband, was the father of the child, she evaded or refused to answer the questions. She admits that she had planned to place the child temporarily in some institution in Charleston in which it would be given care. She attempts to explain her action in permitting a man and a woman who were strangers to her to have the possession of her child by attributing it to worry caused by her unhappy domestic situation and her physical illness at the time. She was not then, however, under the care of any physician, and a number of witnesses who observed her condition testified that she appeared to be in normal health.

Ruth Joplin testifies positively that the relator gave her the child on November 3, 1947, to keep permanently and assured her that she would never try to take it from her. She also says that she told the relator, at the time she obtained the child, that she would not take it unless she could keep it and that the relator permitted her to take the child with the understanding that she was to have it permanently. She is corroborated on that point by the testimony of the other persons who were present at the time she received the child on November 3, 1947.

Ten days afterwards, on November 13, 1947, Ruth Joplin visited the relator while she was still living at Mrs. Naylor's, and requested her to sign a written consent to the adoption of the child by the Joplins. This the relator

declined to do. She testifies that she refused her consent because she had permitted Ruth Joplin to have the child only temporarily. Ruth Joplin's version of the matter is different. She testifies that the relator refused her consent to the adoption of the child for the stated reason that she might need the child in court but that she told her again that, though she then refused her consent, she would never bother her by trying to get possession of the child. The relator's husband, though denying his paternity of the child, testifies that he is willing that it remain with the respondents and that it would be for the best interest of the child for them to have it.

After the child was taken from the hospital and while it was at Mrs. Naylor's with its mother, it received very little attention from her and no medical care, and its health was not of the best. Since it has been in the custody of the respondents it has had medical attention and it now enjoys normal health for a child of its age. The respondent, Ruth Joplin, has given the child constant care and attention, and she and her husband are fond of it and desire to keep and rear it as their own. His age is thirty seven years and her age is twenty five years. He is gainfully employed and is maintaining a suitable and proper home for his wife and the child in Poca, where the respondents have lived together since their marriage early in the year 1947. Though he was divorced by his first wife in 1946, his conduct has been above criticism since his marriage to his present wife and both the respondents enjoy an excellent reputation as persons of good moral character in the community in which they are now living. She is descended from a respected family which has lived in that locality for many years and she has been an active member of her local church.

An important and disputed factual question in this case is the nature of the arrangement by which the relator admittedly delivered the custody of the child to the respondents on November 3, 1947, at which time the baby was only twenty days old. She contends that the possession of the child by Ruth Joplin on that occasion was to be tem-

porary only. In this she is not corroborated by the testimony of any witness who was present at the time. No witness says anything about any temporary arrangement and at least two of them, in addition to the respondent, Ruth Joplin, state positively that the relator said she did not want the child and that she would not undertake to get it back. They also say that she showed no emotion when the child was taken and that she was in normal health at the time.

The circumstances attending the transaction on November 3, 1947, negative the idea that the custody of the child by the respondents was to be temporary. The relator gave her baby into the keeping of strangers whom she had never known or seen until the preceding day and whose place of residence she did not learn until ten days afterwards, on the occasion of her refusal to sign a paper giving her consent to the respondents to adopt the child, when, after saying that she might later change her mind and give her consent, she asked and was told for the first time by Ruth Joplin where the respondents lived. It is unlikely that strangers, such as the Joplins, would agree to keep the baby temporarily without some arrangement as to the time their possession should continue or the amount they should be paid on some periodic basis for the care and the attention which they should be required to give; but nothing of that kind was mentioned or discussed. After the child was taken, the relator, though she was able to, and did, engage in other errands, made no effort to see her or to ascertain her whereabouts or her condition until she demanded the baby's return on the evening of December 30, 1947, when she was accompanied by her brother in whose home she is now living. The evidence presented upon this issue sufficiently shows that the relator agreed that the respondents should have the unqualified possession of the child and that, in accordance with that agreement, she transferred to them her right to its custody.

The writ of habeas corpus, so deeply cherished by the liberty loving people of this State, and so essential to the

protection of their individual freedom, may be invoked to settle disputes which involve the custody of infant children. When used for that purpose the writ is of an equitable nature and the proceeding resembles an equitable proceeding in *rem* in which the *res* is the child. *Pukas* v. *Pukas,* 129 W. Va. 765, 42 S. E. 2d 11; *Green* v. *Campbell,* 35 W. Va. 698, 14 S. E. 212, 29 A. S. R. 843. In a proceeding in habeas corpus involving the right to the custody of an infant the vital and controlling question is the welfare of the child and its determination rests in the sound discretion of the court. Although by statute in this State, Section 7, Article 10, Chapter 44, Code of West Virginia, 1931, the father or the mother of any minor child is entitled to the custody of its person and, while living together, the parents have equal rights to share jointly the custody of their child, the law does not recognize any absolute right in any person or claimant to the custody of a child. *Pukas* v. *Pukas,* 129 W. Va. 765, 42 S. E. 2d 11. A court is not required, in any case, to award the custody of a child to any claimant or any other person but may leave or place it in such custody as its welfare at the time may dictate or require. *Green* v. *Campbell,* 35 W. Va. 698, 14 S. E. 212, 29 A. S. R. 843.

The relator and her husband, who were living together when the child was conceived and until the day of its birth, are now living separate and apart and are engaged in litigation which involves their marital rights and duties. The presumption that the husband, in such circumstances, is the father of the child, despite his denial of that fact, remains in force and, as one of its parents, he has, but does not assert in this proceeding, a right to the custody of the child. He appears to have assented to the custody of the child by the respondents. In his testimony he says that the respondents are good people, that they are more capable of caring for the child than its mother, and that he is willing that they should keep it. The relator, as the mother of the child, also had the right to its custody. This right of a parent is founded on natural law and arises because the child is his or hers to care for and

rear. *Green* v. *Campbell,* 35 W. Va. 698, 14 S. E. 212, 29 A. S. R. 843. It is also expressly declared to exist by statute. Code, 44-10-7. A parent can, however, by a fair agreement, transfer the custody of an infant to another person and by so doing make the custody of the child by such other person valid and legal. *Green* v. *Campbell,* 35 W. Va. 698, 14 S. E. 212, 29 A. S. R. 843; *Cunningham* v. *Barnes,* 37 W. Va. 746, 17 S. E. 308, 38 A. S. R. 57; *Fletcher* v. *Hickman,* 50 W. Va. 244, 40 S. E. 371, 55 L. R. A. 896, 88 A. S. R. 862.

In *Cunningham* v. *Barnes,* 37 W. Va. 746, 17 S. E. 308, 38 A. S. R. 57, a proceeding in habeas corpus instituted by a parent, the father, to recover the custody of his seven year old daughter, whom, when fifteen months of age, at the time of the death of his first wife, the mother of the child, he had transferred to the custody of its grandparents, this Court discharged the writ and, using substantially the same language as that contained in Point 6 of the syllabus in *Green* v. *Campbell,* 35 W. Va. 698, 14 S. E. 212, 29 A. S. R. 843, said in Point 3 of the syllabus: "When a parent has transferred to another the custody of his infant child by fair agreement, which has been acted on by such other person to the manifest interest and welfare of the child, the parent will not be permitted to reclaim the custody of the child, unless he can show that a change of custody will materially promote his child's welfare moral and physical." The syllabus just quoted is peculiarly applicable to the facts of this case. Here the relator transferred the custody of her infant daughter to the respondents by a fair agreement which the respondents have complied with, to the manifest interest and welfare of the child, since she was placed in their possession in November, 1947, and in so doing they have incurred expenses which amount to a substantial sum.

The relator does not show that a change of custody at this time will materially promote the moral or physical welfare of the child. In reality the showing is otherwise. The birth of this little girl was the immediate cause of the disagreements between the relator and her

husband which led to their separation and the unfinished litigation in which they are now involved, which in itself is detrimental to the welfare of the child. The conduct of the relator in refusing to admit or deny that her husband is its father, the statements attributed to her by disinterested witnesses that she hated the child and did not want to keep it, her unnatural act in delivering possession of the infant to strangers without any indication of emotion or sign of uneasiness about its future at that time, and her utter indifference concerning its welfare and its condition from November 3, 1947, to December 30, 1947, indicate clearly that she does not cherish a mother's love for her daughter and render her at present unfit to have the custody of the child. Moreover, she has no home of her own in which to rear or care for the child and no adequate income for that purpose. She is chiefly dependent upon the generosity of her brother for a place to live at present and, though he is able and willing to care for her and the child, he is under no binding or lasting obligation in that respect and may change his present attitude at any time.

In contrast with the attitude and the surroundings of the relator, as they now exist, the respondents occupy and maintain a respectable home in which to rear the child. They are persons of good moral character, live in comfortable circumstances, and the defendant, Denver Joplin, is permanently and gainfully employed. They have taken excellent care of the child during the time they have had its custody, have formed a deep attachment for it, and they earnestly desire to keep and care for it as their own.

Though the right of a parent to the custody of its child, being founded in nature and wisdom and declared by statute, will be respected unless transferred or abandoned, and though a parent is ordinarily entitled to its custody, nevertheless, the court is not bound in any case to deliver the child into the custody of any claimant, but may permit it to remain in such custody as its welfare at the time appears to require. *Cunningham* v. *Barnes,* 37 W. Va. 746,

17 S. E. 308, 38 A. S. R. 57; *Green* v. *Campbell,* 35 W. Va. 698, 14 S. E. 212, 29 A. S. R. 843. In a contest involving the custody of an infant the welfare of the child is the polar star by which the discretion of the court will be guided. *Frame* v. *Wehn,* 120 W. Va. 208, 197 S. E. 524; *Reynolds* v. *Reynolds,* 109 W. Va. 513, 155 S. E. 652; *State ex rel. Cooke* v. *Williams,* 107 W. Va. 450, 148 S. E. 488; *State ex rel. Palmer* v. *Postlethwaite,* 106 W. Va. 383, 145 S. E. 738; *Conner* v. *Harris,* 100 W. Va. 313, 130 S. E. 281; *Cunningham* v. *Barnes,* 37 W. Va. 746, 17 S. E. 308, 38 A. S. R. 57. In this instance both the transfer by the relator of the custody of the child to the respondents and the welfare of the child itself justify the conclusion that there should be no present change of custody and that the relator should not now be permitted to reclaim the custody of her infant daughter. In so holding, however, this Court does not establish an unalterable, permanent custody but permits the custody of the infant to remain in the respondents until the child may have the right to nominate its own guardian or until a material change of circumstances requires a change of custody. *Green* v. *Campbell,* 35 W. Va. 698, 14 S. E. 212, 29 A. S. R. 843.

For the foregoing reasons the writ heretofore awarded in this proceeding is dismissed at the cost of the relator.

*Writ dismissed.*