**STATE OF WEST VIRGINIA
SUPREME COURT OF APPEALS**


*In re* **T.S.**

**No. 20-0996** (Braxton County 18-JA-7)


**MEMORANDUM DECISION**


Petitioners, Paternal Grandparents F.S. and C.S., by counsel Daniel K. Armstrong, appeal the Circuit Court of Braxton County's November 17, 2020, order denying them permanent placement of T.S.[1] The West Virginia Department of Health and Human Resources ("DHHR"), by counsel Lee Niezgoda, filed a response in support of the circuit court's order. The guardian ad litem, Mary Elizabeth Snead, filed a response on behalf of the child also in support of the circuit court's order and a supplemental appendix. Respondent Maternal Grandmother E.M., by counsel Barbara Harmon-Schamberger, filed a response in support of the circuit court's order and a supplemental appendix. Petitioners filed a reply. On appeal, petitioners argue that the circuit court erred in denying them placement of the child on the basis that they maintained contact with their son, who is the child's father.

This Court has considered the parties' briefs and the record on appeal. The facts and legal arguments are adequately presented, and the decisional process would not be significantly aided by oral argument. Upon consideration of the standard of review, the briefs, and the record presented, the Court finds no substantial question of law and no prejudicial error. For these reasons, a memorandum decision affirming the circuit court's order is appropriate under Rule 21 of the Rules of Appellate Procedure.

The DHHR filed a child abuse and neglect petition against the child's parents in January of 2018. It appears that the child was placed with petitioners, the paternal grandparents, at the time of removal and, at some point during the proceedings, petitioners were granted intervenor status. However, in August of 2018, the child was removed from petitioners' care following a domestic incident on their property between their son—the child's father—and their daughter's boyfriend. The child was placed in foster care due to petitioners allegedly allowing the child to have

---

[1]Consistent with our long-standing practice in cases with sensitive facts, we use initials where necessary to protect the identities of those involved in this case. *See In re K.H.*, 235 W. Va. 254, 773 S.E.2d 20 (2015); *Melinda H. v. William R. II*, 230 W. Va. 731, 742 S.E.2d 419 (2013); *State v. Brandon B.*, 218 W. Va. 324, 624 S.E.2d 761 (2005); *State v. Edward Charles L.*, 183 W. Va. 641, 398 S.E.2d 123 (1990).

1

unauthorized contact with the father. Petitioners and the maternal grandmother were granted supervised visits with the child. The circuit court eventually terminated the parents' parental rights in June of 2019, following their failure to complete their respective improvement periods and remedy the conditions of abuse or neglect. Thereafter, both petitioners and the maternal grandmother sought permanent placement of the child.

The circuit court held a series of permanent placement hearings. In August of 2019, the circuit court heard testimony that the DHHR left petitioners' other foster children in the home following the alleged domestic violence incident, removing only T.S. Testimony also indicated that the alleged unauthorized contact between the father and the child had not been entered into the DHHR's record-keeping system and, therefore, could no longer be substantiated. A service provider testified that visits between petitioners and the child were hectic and chaotic, and that petitioner grandfather frequently spoke of the child's father in the child's presence. The circuit court ordered petitioners to cease discussing the case or the child's father in the child's presence and continued the matter in order for the DHHR to provide documentation regarding the child's removal from petitioners' home.

At a permanent placement hearing held in December of 2019, the circuit court placed the child with petitioners and ordered that the father was prohibited from having any direct or indirect contact with the child. In January of 2020, the circuit court held another permanent placement hearing. By that point, the home studies for both petitioners and the maternal grandmother had been approved. An adoption specialist with the DHHR testified that visitation between the maternal grandmother and the child had been going well and further testified that the DHHR's position was that the child should be adopted by the maternal grandmother and not petitioners. At that time, petitioners objected to the testimony and requested a continuance based upon the DHHR's case plan lacking the naming of the proposed adoptive parents and simply listing adoption as the permanency plan. The circuit court continued the matter and ordered the DHHR to file an updated, more detailed family case plan.

The circuit court held a permanent placement hearing in February of 2020. Petitioner grandfather testified that the father did not reside on his property but received mail at a trailer located on his property approximately one-third of a mile from his own residence. Petitioner grandfather testified that he limited his contact with the child's father but had transported him to the courthouse at various times for criminal matters. Petitioner grandfather testified that he would not cease contact with the child's father and expressed his intent to continue assisting the father. Petitioner grandmother testified that she had telephone contact with the father approximately once per week and delivered his mail to him once per week. Petitioner grandmother also conceded that her daughter, who lived in a trailer on petitioners' property, had recently been arrested on drug-related charges. The adoption specialist testified that, although she had initially recommended the child be adopted by petitioners, testimony in the proceedings raised concerns with petitioners' suitability given their continued contact with the father. As a result, the DHHR continued to recommend placement of the child with the maternal grandmother. The circuit court continued the matter.

In March of 2020, the circuit court transferred placement of the child to the maternal grandmother. The circuit court held another permanent placement hearing in July of 2020. A

service provider testified that since the child had been placed with the maternal grandmother, she had supervised only six in-person visits between petitioners and the child due to the COVID-19 pandemic. The service provider testified that the child did not want to attend the visits and would kick and scream, trying to prevent her from putting him in the car to transport him. The provider testified that the maternal grandmother attempted to transport the child herself, but that he resisted being removed from the car. The adoption specialist testified that the child was doing well in his placement with the maternal grandmother and appeared to be comfortable with her. In contrast, the child appeared to be afraid of petitioners during visits. Counsel for petitioners requested a continuance due to the fact that a multidisciplinary team ("MDT") meeting had not been held since January or February of 2020. Out of an abundance of caution, the circuit court continued the matter so that an MDT meeting could be held.

In September of 2020, the circuit court held a final permanent placement hearing and took judicial notice of all prior testimony in the matter. The DHHR advised the circuit court that its position remained the same, recommending that permanent placement of the child be granted to the maternal grandmother. Petitioner grandfather testified that he continued to have contact with the father. Petitioner grandfather also testified that visits with the child had been going well. He was questioned regarding whether his family had been taking photos of the maternal grandmother's home and he stated that they were taking pictures of the roof, which he previously installed, to provide to a potential client. Petitioner grandmother testified that visits with the child went well and stated that placement with her and her husband would be in the child's best interest. Petitioner grandmother claimed that if the child were placed with her and her husband, he would have more contact with his half-sibling, a child not at issue on appeal.[2] Petitioner grandmother further indicated that if the child were placed with her, she would permit the maternal grandmother to have visits with the child. Petitioner grandmother testified that she believed the maternal grandmother continued to have contact with the child's mother and permitted the child to have contact with her. Petitioner grandmother admitted that she continued to have contact with the father a few times each month and took him groceries and other necessities.

S.R., the mother of T.S.'s half-sibling, testified that the children had regular contact with each other when T.S. was placed with petitioners. S.R. testified that visits between the children continued after T.S. was placed with the maternal grandmother, but stated they eventually ceased after the maternal grandmother expressed concerns that petitioners were stalking her at the visits and was concerned for her safety. S.R. testified that she and the maternal grandmother arranged for the children to have video calls with each other thereafter. S.R. testified that she and the maternal grandmother had "always gotten along and there were no issues with the children visiting" prior to the concerns of stalking.

The adoption specialist testified that she had not been made aware of any issues with the sibling visitation and further stated that she believed that S.R. and the maternal grandmother could work together to facilitate sibling visitation in the future. The adoption specialist did not believe that placing the child with petitioners was needed to facilitate further sibling visits. The adoption

---

[2]The child's half-sibling does not live with petitioners but enjoys a close relationship with them.

specialist testified the DHHR continued to believe that permanent placement with the maternal grandmother was in the child's best interest.

The service provider testified that visits between petitioners and the child "are often a little rough" as the child did not always want to attend. The provider testified that the child asked the maternal grandmother to "pinky promise" that she will come back to get him following the visit before he will agree to get out of the car. The service provider testified that when the child was first placed with the maternal grandmother, she used to do "pop in" visits and never witnessed any indication that the mother had been in the home. The provider further testified that she heard the child call the maternal grandmother "mommy" on several occasions.

The maternal grandmother testified that the child was doing excellent in her care. She stated that she believed sibling visitation between the children was extremely important and that she would continue to facilitate the same. The maternal grandmother denied having any contact with the mother except for attending her wedding in October of 2019. The maternal grandmother testified that she would not permit the mother to have contact with the child and further stated that she would permit petitioners to have visits with the child.

Following testimony, the circuit court granted permanent placement of the child to the maternal grandmother. The circuit court found that petitioners and the maternal grandmother had a strong bond with the child and that all parties had been actively involved in the child's life. Moreover, both parties had an approved home study. In considering the child's best interest, the circuit court noted that petitioners continued to have contact with the father and that the maternal grandmother did not have any contact with the mother. The circuit court found that petitioners' continued contact with the father was an "overriding factor" and that no evidence had been submitted to suggest that the maternal grandmother would permit the child to have contact with the mother. Accordingly, the circuit court determined that placement with the maternal grandmother was in the child's best interest. The circuit court granted petitioners visitation with the child. Petitioners appeal the November 17, 2020, order granting placement of the child to the maternal grandmother.

The Court has previously established the following standard of review in cases such as this:

> "Although conclusions of law reached by a circuit court are subject to *de novo* review, when an action, such as an abuse and neglect case, is tried upon the facts without a jury, the circuit court shall make a determination based upon the evidence and shall make findings of fact and conclusions of law as to whether such child is abused or neglected. These findings shall not be set aside by a reviewing court unless clearly erroneous. A finding is clearly erroneous when, although there is evidence to support the finding, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed. However, a reviewing court may not overturn a finding simply because it would have decided the case differently, and it must affirm a finding if the circuit court's account of the evidence is plausible in light of the record viewed in its entirety." Syl. Pt. 1, *In Interest of Tiffany Marie S.*, 196 W.Va. 223, 470 S.E.2d 177 (1996).

4

Syl. Pt. 1, *In re Cecil T.*, 228 W. Va. 89, 717 S.E.2d 873 (2011).

On appeal, petitioners argue that the circuit court erred in denying them placement on the sole basis that they continue to have contact with the child's father. This argument, however, misstates the record, as it is clear that the circuit court considered several factors in denying petitioners placement of the child, chief among them being the child's best interests. Having reviewed the record, we find that there was a sufficient basis to deny petitioners placement of the child absent their alleged potential contact with the child's father. Accordingly, we find no merit to petitioners' argument.

Testimony below established that the child referred to the maternal grandmother as "mommy" and did not want to visit with petitioners. Service provider reports also established that petitioners spoke poorly of the maternal grandmother in the child's presence and told the child and his half-sibling that they would see each other less-frequently if the child was not placed with them. Further, petitioners were observed taking pictures of the maternal grandmother's home and claimed that they were doing so to provide pictures of a roofing job to a potential client. However, the circuit court found that the testimony was not credible and that they were likely searching for evidence against placement of the child with the maternal grandmother. Moreover, testimony established that petitioners' adult daughter, who lived in a trailer on petitioners' property, was arrested on drug-related charges. While the circuit court focused its analysis on petitioners' relationship with the father, we have repeatedly held that "[t]his Court may, on appeal, affirm the judgment of the lower court when it appears that such judgment is correct on any legal ground disclosed by the record, regardless of the ground, reason or theory assigned by the lower court as the basis for its judgment." Syl. Pt. 3, *Barnett v. Wolfolk*, 149 W. Va. 246, 140 S.E.2d 466 (1965).

Importantly, petitioners fail to argue what factors the circuit court should have considered that would have supported placement in their care or why placement of the child in their home was in the child's best interest. Petitioners fail to point out any distinguishing factors suggesting that their home was a more appropriate placement. Further, the record contains no evidence that the maternal grandmother's home was inappropriate. As such, petitioners are simply entitled to no relief.

As we have repeatedly explained, "[i]n a contest involving the custody of an infant the welfare of the child is the polar star by which the discretion of the court will be guided.' Syl. Pt. 2, *State ex rel. Lipscomb v. Joplin*, 131 W.Va. 302, 47 S.E.2d 221 (1948)." Syl. Pt. 3, *In re S.W.*, 233 W. Va. 91, 755 S.E.2d 8 (2014). Having reviewed the record as a whole, it is apparent that several factors indicated that the maternal grandmother's home was a more appropriate placement for the child, and testimony regarding the same was considered by the circuit court at several permanent placement hearings. Given the evidence as set forth above, we conclude that the circuit court did not err in finding that the best interest of the child necessitated placement with the maternal grandmother. Therefore, we find no error in the circuit court's order denying petitioners' request for placement of the child.

For the foregoing reasons, we find no error in the decision of the circuit court, and its November 17, 2020, order is hereby affirmed.

Affirmed.

**ISSUED**: June 22, 2021


**CONCURRED IN BY**:

Chief Justice Evan H. Jenkins
Justice Elizabeth D. Walker
Justice Tim Armstead
Justice John A. Hutchison
Justice William R. Wooton