# STATE OF WEST VIRGINIA
# SUPREME COURT OF APPEALS

*In re* **G.C.-1, G.C.-2, and M.G.**

**No. 21-0953** (Mineral County 20-JA-42, 20-JA-43, and 20-JA-44)

## MEMORANDUM DECISION

Petitioner Mother B.M., by counsel Lauren M. Wilson, appeals the Circuit Court of Mineral County's October 25, 2021, order terminating her parental rights to G.C.-2, and M.G.[1] The West Virginia Department of Health and Human Resources ("DHHR"), by counsel Patrick Morrisey and Katica Ribel, filed a response in support of the circuit court's order. The guardian ad litem, Meredith H. Haines, filed a response on behalf of the children also in support of the circuit court's order. Petitioner filed a reply. On appeal, petitioner argues that the circuit court erred in (1) terminating her parental rights to G.C.-2 when permanency for that child had already been achieved and (2) failing to consider less restrictive alternatives to the termination of her parental rights to M.G.

This Court has considered the parties' briefs and the record on appeal. The facts and legal arguments are adequately presented, and the decisional process would not be significantly aided by oral argument. Upon consideration of the standard of review, the briefs, and the record presented, the Court finds no substantial question of law and no prejudicial error. For these reasons, a memorandum decision affirming the circuit court's order is appropriate under Rule 21 of the Rules of Appellate Procedure.

In October of 2020, the DHHR filed a child abuse and neglect petition against petitioner based upon allegations of drug abuse and deplorable home conditions. Specifically, the DHHR alleged that a parole officer contacted the DHHR after searching petitioner's home in relation to A.G., M.G.'s father, after A.G. purportedly committed parole violations. When parole officers

---

[1] Consistent with our long-standing practice in cases with sensitive facts, we use initials where necessary to protect the identities of those involved in this case. *See In re K.H.*, 235 W. Va. 254, 773 S.E.2d 20 (2015); *Melinda H. v. William R. II*, 230 W. Va. 731, 742 S.E.2d 419 (2013); *State v. Brandon B.*, 218 W. Va. 324, 624 S.E.2d 761 (2005); *State v. Edward Charles L.*, 183 W. Va. 641, 398 S.E.2d 123 (1990). Additionally, because two of the children share the same initials, we will refer to them as G.C.-1 and G.C.-2, respectively, throughout this memorandum decision. Lastly, petitioner's parental rights to G.C.-1 remain intact, and she does not raise any assignments of error pertaining to that child.

searched the home, they found it to be in deplorable condition with an apparent roach infestation including roaches in the children's beds. The officers also smelled feces throughout the home. Copious amounts of drug paraphernalia were found in the home, including needles, pipes, bongs, razors, baggies, and a burnt spoon, among other things. A.G.'s brother, who was present in the home, admitted that he and A.G. abused drugs in the home. Officers searched A.G.'s phone and discovered evidence that petitioner and A.G. were selling or obtaining drugs. The DHHR further alleged that petitioner left the children with other people such that they were forced to obtain guardianships of the children. For instance, petitioner left G.C.-1 with the maternal grandmother in Maryland and G.C.-2 with A.B., a friend in West Virginia.[2] Petitioner waived her preliminary hearing.

In December of 2020, the circuit court held an adjudicatory hearing. Petitioner stipulated to the allegations contained in the petition. The circuit court accepted petitioner's stipulation and adjudicated her as an abusing parent. The circuit court later granted petitioner a post-adjudicatory improvement period in January of 2021.

According to reports filed by the DHHR and service providers, petitioner was noncompliant with services. Although petitioner often screened negative for drugs, she missed several screens and tested positive for fentanyl and methamphetamine, respectively, on at least one occasion. Further, petitioner failed to consistently attend her parenting and adult life skills classes and completed none of the curriculum. In fact, petitioner was still on the introductory chapter of her parenting curriculum as of May of 2021. As such, the parenting and adult life skills provider recommended that petitioner's classes be discontinued and opined that her prognosis for improving her parenting was poor.

The circuit court held an initial dispositional hearing in July of 2021. A Child Protective Services ("CPS") worker testified that petitioner failed to consistently participate in parenting and adult life skills classes or submit to drug screens. Further, because petitioner failed to consistently submit to drug screens, she had not been permitted to visit with the children. A service provider testified that, although petitioner initially complied with services, she quickly ceased fully participating. The provider stated that petitioner frequently failed to attend or cancelled sessions and, when she attended sessions, she failed to complete her homework. The provider characterized petitioner's participation as "very poor." The service provider also testified that petitioner missed numerous drug screens, that petitioner tested positive for fentanyl and methamphetamine in May of 2021, and that petitioner tested positive for fentanyl in July of 2021.

Petitioner testified that she missed classes and drug screens because she lacked transportation. Petitioner requested additional time to participate in services, stating that she now had transportation and had not used any drugs since her last failed screen. However, on cross-examination, petitioner testified that she had not obtained her driver's license and that her mother was providing her transportation. Petitioner acknowledged that she was unemployed and had tested positive for drugs on a few occasions.

---

[2]Although not clear from the record, it appears that A.B. (petitioner's friend) initially obtained a temporary legal guardianship of G.C.-2, but later obtained permanent legal guardianship.

Following testimony, the circuit court denied petitioner's motion for an extension of her improvement period and terminated her parental rights to M.G. upon finding that there was no reasonable likelihood that petitioner could correct the conditions of abuse and neglect in the near future and that termination was necessary for the child's welfare. The circuit court found that petitioner failed to comply with services and had not remedied her issues with substance abuse. The circuit court noted that testimony indicated petitioner was not progressing in her services and showed no indication that she was going to change in the near future. The circuit court continued the matter regarding the other two children as the multidisciplinary team was deciding what disposition to recommend.

In September of 2021, the circuit court held a final dispositional hearing. At the hearing, A.B. testified that petitioner moved in with A.B.'s mother when G.C.-2 was about two or three years old. Petitioner lived in the home for about a year and then left and never returned for G.C.-2. A.B. stated that she took the child and obtained temporary legal guardianship as it had become difficult to take the child to the doctor without petitioner's cooperation. A.B. also stated that petitioner never attended or contested the guardianship proceedings, and while A.B. initially tried to facilitate visits between petitioner and G.C.-2, those visits stopped when the child reported safety concerns during the visits, including petitioner's attempt to kidnap the child. A.B. continued to allow phone calls between the child and petitioner, but at the time of the final dispositional hearing, petitioner had not called the child in four or five years and failed to provide any financial support to the child. According to A.B., G.C.-2 wanted to be adopted and have her last name changed to match A.B.'s significant other's last name. The child did not want to visit with petitioner. A CPS worker testified and corroborated that the child desired to be adopted by A.B.

Ultimately, the circuit court terminated petitioner's parental rights to G.C.-2. The circuit court found that the child's best interests were served by termination as the child knew A.B. as her mother and desired to be adopted by her. The circuit court noted that petitioner failed to complete her improvement period, failed to address the conditions of abuse and neglect, and was not able to parent the child. The circuit court further noted that petitioner had not had contact with the child in several years and had not petitioned the court to try to exercise visitation. The circuit court also found that there were no services that could remedy the lack of a bond between petitioner and the child and that there was no reason to keep the legal parent-child relationship intact. The circuit court did not impose a disposition with regard to G.C.-1, who is in a guardianship with the maternal grandmother pursuant to a Maryland order. Petitioner appeals the circuit court's October 25, 2021, dispositional order terminating her parental rights to G.C.-2 and M.G.[3]

The Court has previously established the following standard of review in cases such as this:

---

[3]G.C.-1 remains in the custody of petitioner's mother pursuant to an order from Maryland. G.C.-2's father's parental rights were terminated in January of 2022, and the permanency plan for the child is adoption by A.B. M.G.'s father's parental rights were terminated during the proceedings below. The permanency plan for M.G. is adoption by her foster family.

"Although conclusions of law reached by a circuit court are subject to *de novo* review, when an action, such as an abuse and neglect case, is tried upon the facts without a jury, the circuit court shall make a determination based upon the evidence and shall make findings of fact and conclusions of law as to whether such child is abused or neglected. These findings shall not be set aside by a reviewing court unless clearly erroneous. A finding is clearly erroneous when, although there is evidence to support the finding, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed. However, a reviewing court may not overturn a finding simply because it would have decided the case differently, and it must affirm a finding if the circuit court's account of the evidence is plausible in light of the record viewed in its entirety." Syl. Pt. 1, *In Interest of Tiffany Marie S.*, 196 W.Va. 223, 470 S.E.2d 177 (1996).

Syl. Pt. 1, *In re Cecil T.*, 228 W. Va. 89, 717 S.E.2d 873 (2011).

On appeal, petitioner first argues that the circuit court erred in terminating her parental rights to G.C.-2 when permanency for the child had already been achieved. Petitioner states that the proceedings focused on M.G. and that only after petitioner's parental rights to that child were terminated did the DHHR seek to terminate petitioner's parental rights to G.C.-2 as well. Petitioner contends that the child had been in a permanent guardianship for nearly five years when the case was initiated and that it was not necessary to terminate petitioner's parental rights for that reason. The sole purpose for terminating petitioner's parental rights to G.C.-2 was to facilitate adoption. According to petitioner, rather than terminate her parental rights, the circuit court should have imposed disposition pursuant to West Virginia Code § 49-4-604(c)(5), which allows for a child to be committed to the care, custody, and control of a guardian.[4]

Second, petitioner also argues that the circuit court erred in terminating her parental rights to M.G. without considering less restrictive alternatives. Petitioner initially complied with services and attended court hearings throughout the case. She admits that her participation became sporadic due to her transportation issues but claims that she attempted to participate in her treatment program. Petitioner established at disposition that she obtained transportation, was seeking medically assisted treatment, and would participate in services if given more time. As such, petitioner avers the circuit court erred in imposing the most drastic disposition available.

We find no error in the termination of petitioner's parental rights to either G.C.-2 or M.G. West Virginia Code § 49-4-604(c)(6) provides that circuit courts are to terminate parental, custodial, and guardianship rights upon finding that there is "no reasonable likelihood that the conditions of neglect or abuse can be substantially corrected in the near future" and that

---

[4]West Virginia Code § 49-4-604(c)(5) provides as follows:

Upon a finding that the abusing parent or battered parent or parents are presently unwilling or unable to provide adequately for the child's needs, commit the child temporarily to the care, custody, and control of the state department, a licensed private child welfare agency, or a suitable person who may be appointed guardian by the court.

termination is necessary for the children's welfare. West Virginia Code § 49-4-604(d)(3) provides that a circuit court may find that there is no reasonable likelihood that the conditions of abuse and neglect can be substantially corrected when the abusing parent has

> not responded to or followed through with a reasonable family case plan or other rehabilitative efforts of social, medical, mental health, or other rehabilitative agencies designed to reduce or prevent the abuse or neglect of the child, as evidenced by the continuation or insubstantial diminution of conditions which threatened the health, welfare, or life of the child.

Here, petitioner failed to follow through with services designed to reduce or prevent the abuse and neglect of the children. Although petitioner sporadically participated in services, she failed to sufficiently address her parenting deficits such that the children could be returned to her home. Petitioner failed to satisfactorily comply with parenting and adult life skills classes as she missed several classes, failed to do her homework, and remained in the first chapter of the curriculum despite several months of this service. The service provider testified that petitioner made no progress and opined that her prognosis for improved parenting was poor based on petitioner's lack of motivation. Further, petitioner missed several drug screens during the proceedings and tested positive for fentanyl and/or methamphetamine on two occasions. While petitioner argues that she needed more time and would have increased her participation in her improvement period as she had obtained transportation, the record reveals that petitioner was simply relying on her mother to drive her places. The evidence as set forth above is sufficient to support a finding that there was no reasonable likelihood that petitioner could correct the conditions of abuse and neglect in the near future and that termination of her parental rights was necessary for the children's welfare.

To the extent petitioner argues that her parental rights to G.C.-2 should not have been terminated because the child had already achieved permanency, we find no error. "'In a contest involving the custody of an infant the welfare of the child is the polar star by which the discretion of the court will be guided.' Syl. Pt. 2, *State ex rel. Lipscomb v. Joplin*, 131 W.Va. 302, 47 S.E.2d 221 (1948)." Syl. Pt. 3, *In re S.W.*, 233 W. Va. 91, 755 S.E.2d 8 (2014). Additionally, "we find that adoption, with its corresponding rights and duties, is the permanent out-of-home placement option which is most consistent with the child's best interests." *State v. Michael M.*, 202 W. Va. 350, 358, 504 S.E.2d 177, 185 (1998) (internal quotations omitted). Here, the record establishes that petitioner essentially abandoned G.C.-2 to A.B. and her family, requiring them to seek guardianship of the child. When petitioner visited with the child, she exposed the child to unsafe conditions. After in-person visits were ended for the child's safety, petitioner eventually ceased calling the child and, as of the dispositional hearing, had not called the child in four or five years. Further, petitioner failed to provide any financial or emotional support to the child. Testimony established that the child did not want to visit with petitioner, was afraid of her, and desired to be adopted by A.B. and share the family name. The circuit court found that A.B. was the only parental figure that G.C.-2 could remember, there were no services that could remedy the lack of bond between petitioner and G.C.-2, there was no reason to keep the parent-child relationship intact, and that adoption by A.B. and her family was in the child's best interests. Although petitioner cites to West Virginia Code § 49-4-604(c)(5) to assert that a less restrictive alternative to the termination of her parental rights was available with regard to G.C.-2, she fails to recognize that this disposition

is expressly meant to be a temporary situation. *See In re I.A.*, 19-0152, 2019 WL 2451150, at *3 (W. Va. Jun. 12, 2019)(memorandum decision) ("What petitioner fails to recognize is that this dispositional alternative [under West Virginia Code § 49-4-604(c)(5)] provides only for a temporary placement for the child[.]").

Accordingly, in considering petitioner's failure to remedy the conditions of abuse and neglect and the children's best interests, we cannot find that the circuit court erred in terminating petitioner's parental rights to either M.G. or G.C.-2. Petitioner is entitled to no relief in this regard.

For the foregoing reasons, we find no error in the decision of the circuit court, and its October 25, 2021, order is hereby affirmed.

Affirmed.

**ISSUED**: May 12, 2022

**CONCURRED IN BY**:

Chief Justice John A. Hutchison
Justice Elizabeth D. Walker
Justice Tim Armstead
Justice William R. Wooton
Justice C. Haley Bunn