IN THE SUPREME COURT OF APPEALS OF WEST VIRGINIA

January 2024 Term

_____

No. 22-884
_____

**FILED**

**June 12, 2024**

released at 3:00 p.m.
C. CASEY FORBES, CLERK
SUPREME COURT OF APPEALS
OF WEST VIRGINIA

*IN RE* M.F. III

_____

Appeal from the Circuit Court of Kanawha County
The Honorable Joanna I. Tabit, Judge
Juvenile Action No. 21-JA-291

AFFIRMED, IN PART, AND REMANDED, IN PART, WITH DIRECTIONS
_____

Submitted: February 20, 2024
Filed: June 12, 2024

Sandra K. Bullman, Esq.
Bullman and Bullman
Charleston, West Virginia
Attorney for the Petitioners,
M.F. I and J.F.

Patrick Morrisey, Esq.
Attorney General
Andrew T. Waight, Esq.
Assistant Attorney General
Charleston, West Virginia
Attorneys for the Respondent,
West Virginia Department of
Human Services

Sharon K. Childers, Esq.
Charleston, West Virginia
Guardian ad Litem for the Minor Child,
M.F. III

JUSTICE BUNN delivered the Opinion of the Court.

**SYLLABUS BY THE COURT**

1.      "A circuit court's decision on an individual's motion for permissive intervention in a child abuse and neglect proceeding pursuant to West Virginia Code § 49-4-601(h) (2019) is reviewed under a two-part standard of review. We review de novo whether the individual seeking permissive intervention was afforded 'a meaningful opportunity to be heard' as required by West Virginia Code § 49-4-601(h), and we review for an abuse of discretion a circuit court's decision regarding the 'level and type of participation' afforded to individuals seeking permissive intervention, i.e., foster parents, pre-adoptive parents, and relative caregivers, pursuant to Syllabus point 4, in part, *State ex rel. C.H. v. Faircloth*, 240 W. Va. 729, 815 S.E.2d 540 (2018)." Syllabus point 1, *In re H.W.*, 247 W. Va. 109, 875 S.E.2d 247 (2022).

2.      "Where the issue on an appeal from the circuit court is clearly a question of law or involving an interpretation of a statute, we apply a *de novo* standard of review." Syllabus point 1, *Chrystal R.M. v. Charlie A.L.*, 194 W. Va. 138, 459 S.E.2d 415 (1995).

3.      "Foster parents, pre-adoptive parents, or [sic] relative caregivers who occupy only their statutory role as individuals entitled to a meaningful opportunity to be heard pursuant to West Virginia Code § 49-4-601(h) (2015) are subject to discretionary limitations on the level and type of participation as determined by the circuit court. Foster

i

parents who have been granted the right to intervene are entitled to all the rights and responsibilities of any other party to the action." Syllabus point 4, in part, *State ex rel. C.H. v. Faircloth*, 240 W. Va. 729, 815 S.E.2d 540 (2018).

4.    "By specifying in West Virginia Code [§ 49-4-114(a)(3) (eff. 2015)] that the home study must show that the grandparents 'would be suitable adoptive parents,' the Legislature has implicitly included the requirement for an analysis by the Department of [Human Services] and circuit courts of the best interests of the child, given all circumstances of the case." Syllabus point 5, *Napoleon S. v. Walker*, 217 W. Va. 254, 617 S.E.2d 801 (2005).

5.    "The mandatory language of W. Va. Code [§ 49-4-114(a)(3) (eff. 2015)] requires that a home study evaluation be conducted by the West Virginia Department of [Human Services] to determine if any interested grandparent would be a suitable adoptive parent." Syllabus point 9, *In re L.M.*, 235 W. Va. 436, 774 S.E.2d 517 (2015).

6.    "While the grandparent preference statute, at W. Va. Code [§ 49-4-114(a)(3) (eff. 2015)], places a mandatory duty on the West Virginia Department of [Human Services] to complete a home study before a child may be placed for adoption with an interested grandparent, 'the department shall first consider the [grandparent's] suitability and willingness . . . to adopt the child.' There is no statutory requirement that a

home study be completed in the event that the interested grandparent is found to be an unsuitable adoptive placement and that placement with such grandparent is not in the best interests of the child." Syllabus point 10, *In re L.M.*, 235 W. Va. 436, 774 S.E.2d 517 (2015).

7. "In a contest involving the custody of an infant the welfare of the child is the polar star by which the discretion of the court will be guided." Syllabus point 2, *State ex rel. Lipscomb v. Joplin*, 131 W. Va. 302, 47 S.E.2d 221 (1948).

**BUNN, Justice:**

The petitioners, M.F. I[1] and J.F. (collectively, "the Grandparents"), are the paternal grandparents of the child at issue in the underlying abuse and neglect proceeding, M.F. III. In this appeal, the Grandparents assign error to the order entered October 24, 2022, by the Circuit Court of Kanawha County denying their renewed motion to intervene in the underlying proceedings. The Grandparents further complain that the respondent, the West Virginia Department of Human Services ("DHS"),[2] has not afforded them a home

---

[1] In cases involving sensitive facts, we use initials instead of full names to refer to the parties. *See, e.g.*, *In re K.L.*, 241 W. Va. 546, 548 n.1, 826 S.E.2d 671, 673 n.1 (2019); *In re S.H.*, 237 W. Va. 626, 628 n.1, 789 S.E.2d 163, 165 n.1 (2016). *See also* W. Va. R. App. P. 40(e) (restricting use of personal identifiers in cases involving children).

Additionally, several of the individuals involved in this case share the initials M.F. For ease of reference, we will refer to the paternal grandfather as M.F. I, the child's father as M.F. II ("the Father"), and the child at issue in these proceedings as M.F. III. The Father's additional two children, who are M.F. III's half-siblings, will be referenced as M.F.-1 and M.F.-2.

[2] Pursuant to West Virginia Code § 5F-2-1a (eff. 2023), the agency formerly known as the West Virginia Department of Health and Human Resources was terminated. It is now three separate agencies—the Department of Health Facilities, the Department of Health, and the Department of Human Services. *See* W. Va. Code § 5F-1-2 (eff. 2024). For purposes of abuse and neglect appeals, the agency is now the Department of Human Services ("DHS").

1

study pursuant to West Virginia Code § 49-4-114(a)(3) (eff. 2015)[3] even though their grandchild is now eligible to be considered for adoption.[4]

We find that the circuit court did not err by denying the Grandparents' motions to intervene and affirm the circuit court's order. However, we find that the DHS has failed to comply with the mandatory language of West Virginia Code § 49-4-114(a)(3) requiring it to "consider the suitability" of grandparents who seek to adopt a child after the parents' rights to the child have been terminated in an abuse and neglect proceeding. *Id.* Because the DHS has not fulfilled this statutory requirement despite the Grandparents' express interest in adopting M.F. III, we remand the case, in part, with directions to the circuit court to order the DHS to comply with the terms of West Virginia Code § 49-4-114(a)(3). Following the DHS's completion of these statutory duties, we further direct the circuit court to determine the placement that is most compatible with the child's best interests.

---

[3] Although the Legislature amended West Virginia Code § 49-4-114(a)(3) in 2024 to permit a circuit court to determine a grandparent's suitability as an adoptive placement without a home study, the amended version of the statute was not in effect at the time of the events giving rise to this appeal. Therefore, we apply the 2015 version of West Virginia Code § 49-4-114(a)(3) to the facts of this case. For further discussion of this statute, see Section III.B., *infra*.

[4] The circuit court terminated the Father's parental rights; the Father appealed; and we affirmed the termination. *See In re M.F.-1*, No. 22-929, 2024 WL 1193570 (W. Va. Mar. 20, 2024) (memorandum decision).

## I.

## FACTUAL AND PROCEDURAL HISTORY

The underlying abuse and neglect case[5] began in May 2021 when the Father fatally stabbed[6] M.F. III's mother. The child, who was approximately five months old at the time, was found in the same room as his mother's body when law enforcement officers and Child Protective Services ("CPS") workers arrived at the residence. The Father called his ex-wife, N.C.-F., the mother of M.F. III's two half-siblings, and asked her to pick up M.F. III from the Father's residence. However, CPS placed M.F. III with his maternal aunt, S.M., who lived with M.F. III's maternal grandmother, because M.F. III's oldest half-sibling[7] resided nearby with another maternal relative. The Grandparents lived in Baltimore, Maryland, at the time of M.F. III's mother's death, but they had a second home in Charleston, West Virginia. Following M.F. III's mother's death and the Father's arrest,

---

[5] Our recitation of the facts at issue in this case is necessarily limited due to the Grandparents' restricted access to the record of the underlying abuse and neglect proceeding because they were not parties or intervenors below. Further factual details about M.F. III's abuse and neglect proceeding are contained in the companion cases addressing the Father's appeal and the appeal filed by N.C.-F., the mother of M.F. III's half-siblings. *See generally In re M.F.-1*, No. 22-929, 2024 WL 1193570 (Father's appeal); *In re M.F.-1*, No. 22-917, ___ W. Va. ___, ___ S.E.2d ___, 2024 WL _____ (June 12, 2024) (siblings' mother's appeal).

[6] The Father ultimately pleaded guilty to voluntary manslaughter of the mother.

[7] This child, who has the same mother as M.F. III but a different father, is not involved in this appeal.

3

the DHS filed an abuse and neglect petition alleging that M.F. III was an abused and neglected child.

On June 11, 2021, approximately one month after M.F. III's mother's death and the child's removal from the home, the Grandparents filed a motion to intervene seeking M.F. III's placement and/or visitation with the child. During the hearing on the motion, which was also the preliminary hearing on the abuse and neglect petition, counsel for the Grandparents moved to hold their intervention motion in abeyance until the completion of paternity testing. Therefore, the circuit court denied the Grandparents' motion to intervene at that juncture.

After paternity testing established that M.F. III is the Father's child, the Grandparents filed two additional motions to intervene, on October 20, 2021, and September 27, 2022. The circuit court also denied those motions, by orders entered November 9, 2021, and October 24, 2022, respectively.[8] The Grandparents now appeal to this Court.

---

[8] The circuit court also denied the Grandparents' December 9, 2021 petition to be appointed as the child's guardians, due, in part, to the ongoing abuse and neglect proceedings.

## II.

## STANDARD OF REVIEW

The Grandparents assign error to (1) the circuit court's denial of their motions to intervene in the underlying abuse and neglect proceeding and (2) the DHS's failure to conduct a home study in accordance with West Virginia Code § 49-4-114(a)(3) once the Father's parental rights had been terminated and they expressed interest in adopting the child. We review a circuit court's rulings on motions to intervene using a two-part standard:

> A circuit court's decision on an individual's motion for permissive intervention in a child abuse and neglect proceeding pursuant to West Virginia Code § 49-4-601(h) (2019) is reviewed under a two-part standard of review. We review de novo whether the individual seeking permissive intervention was afforded "a meaningful opportunity to be heard" as required by West Virginia Code § 49-4-601(h), and we review for an abuse of discretion a circuit court's decision regarding the "level and type of participation" afforded to individuals seeking permissive intervention, i.e., foster parents, pre-adoptive parents, and relative caregivers, pursuant to Syllabus point 4, in part, *State ex rel. C.H. v. Faircloth*, 240 W. Va. 729, 815 S.E.2d 540 (2018).

Syl. pt. 1, *In re H.W.*, 247 W. Va. 109, 875 S.E.2d 247 (2022). Issues pertaining to the interpretation and application of a statute are afforded plenary review: "Where the issue on an appeal from the circuit court is clearly a question of law or involving an interpretation of a statute, we apply a *de novo* standard of review." Syl. pt. 1, *Chrystal R.M. v. Charlie A.L.*, 194 W. Va. 138, 459 S.E.2d 415 (1995).

5

# III.

## DISCUSSION

On appeal to this Court, the Grandparents raise two assignments of error. We first address whether the circuit court erred in denying the Grandparents' motions to intervene in the underlying abuse and neglect case, and then we consider whether the Grandparents are entitled to a home study under West Virginia Code § 49-4-114(a)(3).

### A. *Motion to Intervene*

Intervention in child abuse and neglect proceedings is governed by statute. *See In re H.W.*, 247 W. Va. at 113, 875 S.E.2d at 251 (noting that "[t]he right to intervene in an abuse and neglect proceeding is governed by statute" (footnote omitted)). West Virginia Code § 49-4-601(h) provides that

> [i]n any proceeding pursuant to this article, the party or parties having custodial or other parental rights or responsibilities to the child shall be afforded a meaningful opportunity to be heard, including the opportunity to testify and to present and cross-examine witnesses. Foster parents, pre-adoptive parents, and relative caregivers shall also have a meaningful opportunity to be heard.

*Id.* We have interpreted this statute to mean that

> [f]oster parents, pre-adoptive parents, or [sic] relative caregivers who occupy only their statutory role as individuals entitled to a meaningful opportunity to be heard pursuant to West Virginia Code § 49-4-601(h) (2015) are subject to discretionary limitations on the level and type of participation as determined by the circuit court. Foster parents who have been granted the right to intervene are entitled to all the rights and responsibilities of any other party to the action.

6

Syl. pt. 4, in part, *State ex rel. C.H. v. Faircloth*, 240 W. Va. 729, 815 S.E.2d 540.

Applying the *In re H.W.* standard of review to the facts of this case, we find that the circuit court did not err by denying the Grandparents' motions to intervene because they are not within the class of individuals identified as parties to abuse and neglect proceedings given that they did not have any parental or custodial rights to M.F. III. *See* Syl. pt. 1, *In re H.W.*, 247 W. Va. 109, 875 S.E.2d 247. *Accord* W. Va. Code § 49-4-601(h). The Grandparents also are not within the category of persons who are afforded the opportunity to seek permissive intervention under West Virginia Code § 49-4-601(h) because they were not the child's "[f]oster parents, pre-adoptive parents, [or] relative caregivers." *Id. Accord* Syl. pt. 4, in part, *State ex rel. C.H.*, 240 W. Va. 729, 815 S.E.2d 540.

Although the Grandparents now seek to be considered as an adoptive placement for the child, they did not state their desire to adopt the child in their first two motions to intervene in which they sought only placement of the child and/or visitation. In their first motion to intervene, the Grandparents requested to intervene "for the sole purpose of receiving placement of the minor child and/or grandparent visitation." To support their motion, the Grandparents averred that "since the time of the minor child's birth," they "have been a consistent presence in the minor child's life"; "very much love and care for their grandson"; and "have a bond with the child." Yet, during the preliminary hearing at which the circuit court considered their motion, they requested the court to hold

7

their motion to intervene in abeyance pending paternity testing to ensure that M.F. III is, in fact, their biological grandchild. The circuit court then denied their motion. After paternity testing confirmed that the Grandparents are M.F. III's biological paternal grandparents, they filed a second motion to intervene in which they again sought "permission to intervene . . . for the sole purpose of receiving placement of the minor child and/or grandparent visitation." The circuit court also denied this motion.

The Grandparents did not formally communicate their desire to adopt M.F. III to the circuit court until they filed their third motion to intervene in which they referenced West Virginia Code § 49-4-114(a)(3)[9] and specifically requested that "they be granted permanent placement of their grandson [and] that they be granted consent to adopt their grandson." At that juncture, the circuit court had not yet entered its order terminating the Father's parental rights and had not yet placed M.F. III in the DHS's permanent custody.[10] Therefore, the child was not subject to adoptive placement by the DHS at the time the Grandparents filed their third motion to intervene.

Moreover, although West Virginia Code § 49-4-114(a)(3) establishes a grandparental adoptive preference once a child has been placed in the DHS's permanent custody, this preference is not absolute. *See In re Elizabeth F.*, 225 W. Va. 780, 787, 696

---

[9] Additional discussion regarding West Virginia Code § 49-4-114(a)(3) is set forth in Section III.B., *infra*.

[10] *See In re M.F.-1*, No. 22-929, 2024 WL 1193570, at *1.

8

S.E.2d 296, 303 (2010) (per curiam) (recognizing that "adoption by a child's grandparents is permitted only if such adoptive placement serves the child's best interests. If, upon a thorough review of the entire record, the circuit court believes that a grandparental adoption is not in the subject child's best interests, it is not obligated to prefer the grandparents over another, alternative placement that does serve the child's best interests." (citations omitted)). Before the Grandparents could be considered pre-adoptive parents, they had to submit to a home study evaluation, and the circuit court had to determine whether placing M.F. III with the Grandparents for adoption would serve his best interests. *See* Syl. pt. 5, *Napoleon S. v. Walker*, 217 W. Va. 254, 617 S.E.2d 801 (2005) ("By specifying in West Virginia Code [§ 49-4-114(a)(3) (eff. 2015)] that the home study must show that the grandparents 'would be suitable adoptive parents,' the Legislature has implicitly included the requirement for an analysis by the Department of [Human Services] and circuit courts of the best interests of the child, given all circumstances of the case."). Therefore, the circuit court did not err by denying the Grandparents' motions to intervene in the underlying abuse and neglect proceedings because they were not, at the time any of the motions were filed, within the class of individuals who may seek permissive intervention pursuant to West Virginia Code § 49-4-601(h).

### B. Grandparental Preference Statute

Following the circuit court's termination of the Father's parental rights and its placement of M.F. III in the DHS's permanent custody, the Grandparents now seek to invoke the grandparental adoption preference and request that they be granted a home study

9

to satisfy the statute's requirements. West Virginia Code § 49-4-114(a)(3) grants grandparents wishing to adopt their grandchild preferential consideration as the child's permanent adoptive placement if the statute's requirements are satisfied:

> For purposes of any placement of a child for adoption by the department, the department shall first consider the suitability and willingness of any known grandparent or grandparents to adopt the child. Once grandparents who are interested in adopting the child have been identified, *the department shall conduct a home study evaluation*, including home visits and individual interviews by a licensed social worker. If the department determines, based on the home study evaluation, that the grandparents would be suitable adoptive parents, it shall assure that the grandparents are offered the placement of the child prior to the consideration of any other prospective adoptive parents.

*Id.* (emphasis added).

We have interpreted this statute as requiring the satisfaction of two distinct statutory conditions:

> By specifying in West Virginia Code [§ 49-4-114(a)(3) (eff. 2015)] that the home study must show that the grandparents "would be suitable adoptive parents," the Legislature has implicitly included the requirement for an analysis by the Department of [Human Services] and circuit courts of the best interests of the child, given all circumstances of the case.

Syl. pt. 5, *Napoleon S.*, 217 W. Va. 254, 617 S.E.2d 801. *See also* Syl. pt. 4, in part, *Napoleon S.*, *id.* ("West Virginia Code [§ 49-4-114(a)(3) (eff. 2015)] provides for grandparent preference in determining adoptive placement for a child where parental rights have been terminated and also incorporates a best interests analysis within that

10

determination by including the requirement that the [DHS] find that the grandparents would be suitable adoptive parents prior to granting custody to the grandparents."). In other words, operation of the grandparental adoption preference contemplates the satisfaction of two statutory criteria: the grandparents' suitability as a permanent placement for the child, and the DHS's completion of the grandparents' home study. *See* W. Va. Code § 49-4-114(a)(3).

Here, the Grandparents assert that the circuit court erred by not directing the DHS to conduct a home study as contemplated by West Virginia Code § 49-4-114(a)(3). Examining this statutory language, we have held that the home study requirement is a necessary prerequisite to the application of the statutory grandparental adoption preference:

> The mandatory language of W. Va. Code [§ 49-4-114(a)(3) (eff. 2015)] requires that a home study evaluation be conducted by the West Virginia Department of [Human Services] to determine if any interested grandparent would be a suitable adoptive parent.

Syl. pt. 9, *In re L.M.*, 235 W. Va. 436, 774 S.E.2d 517 (2015). Therefore, the home study is an essential component of the grandparental adoption preference.[11]

The Grandparents contend, and the DHS concedes, that no home study of the Grandparents' residence was ordered or undertaken to assess their suitability as adoptive parents for M.F. III after the circuit court terminated the Father's parental rights to the child

---

[11] *But see* note 3, *supra*.

11

and placed him in the DHS's permanent custody. However, it appears that the more pressing concern is that the DHS has not considered "the suitability" of the Grandparents as an adoptive placement for the child in the first instance. W. Va. Code § 49-4-114(a)(3). We previously have explained that an assessment of a grandparent's suitability as an adoptive placement may be determinative of the need for the grandparent's further evaluation through a home study:

> While the grandparent preference statute, at W. Va. Code [§ 49-4-114(a)(3) (eff. 2015)], places a mandatory duty on the West Virginia Department of [Human Services] to complete a home study before a child may be placed for adoption with an interested grandparent, "the department shall first consider the [grandparent's] suitability and willingness . . . to adopt the child." There is no statutory requirement that a home study be completed in the event that the interested grandparent is found to be an unsuitable adoptive placement and that placement with such grandparent is not in the best interests of the child.

Syl. pt. 10, *In re L.M.*, 235 W. Va. 436, 774 S.E.2d 517. Because the DHS has not complied with the statutory directive of first considering the suitability of the Grandparents as an adoptive placement for M.F. III, we find it necessary to remand this case, in part, with directions to the circuit court to order the DHS to comply with the requirements of West Virginia Code § 49-4-114(a)(3).

Finally, we remind all parties that the preeminent concern is determining the permanent placement that serves M.F. III's best interests. *See* Syl. pt. 5, *Napoleon S.*, 217 W. Va. 254, 617 S.E.2d 801. "In a contest involving the custody of an infant the welfare of the child is the polar star by which the discretion of the court will be guided." Syl. pt. 2,

*State ex rel. Lipscomb v. Joplin*, 131 W. Va. 302, 47 S.E.2d 221 (1948). *Accord* Syl. pt. 5, in part, *Carter v. Carter*, 196 W. Va. 239, 470 S.E.2d 193 (1996) ("In . . . custody matters, we have traditionally held paramount the best interests of the child."). *See also* Syl. pt. 3, in part, *In re Katie S.*, 198 W. Va. 79, 479 S.E.2d 589 (1996) ("[T]he primary goal in cases involving abuse and neglect . . . must be the health and welfare of the children."). Therefore, on remand, following the DHS's compliance with the requirements of the grandparental preference statute, the circuit court is directed to conduct a best interests analysis to determine the permanent placement that would best promote M.F. III's welfare.

## IV.

## CONCLUSION

For the foregoing reasons, we affirm the circuit court's October 24, 2022 order that denied the Grandparents' motions to intervene in the underlying abuse and neglect proceeding. We further remand this case, in part, with directions to the circuit court to order the DHS to comply with the statutory requirements of West Virginia Code § 49-4-114(a)(3) (eff. 2015). Finally, upon completion of the DHS's statutory duties, the circuit court is directed to conduct a best interests analysis to determine M.F. III's permanent placement.

Affirmed, in part, and Remanded, in part, with Directions.