**STATE OF WEST VIRGINIA**
**SUPREME COURT OF APPEALS**

*In re* S.P.-1

**No. 21-0916** (Kanawha County 20-JA-204)

## MEMORANDUM DECISION

Petitioner Maternal Grandmother P.P., by counsel Matthew A. Victor, appeals the Circuit Court of Kanawha County's October 26, 2021, order terminating her guardianship rights to S.P.-1.[1] The West Virginia Department of Health and Human Resources ("DHHR"), by counsel Patrick Morrisey and Mindy M. Parsley, filed a response in support of the circuit court's order. The guardian ad litem, Christopher C. McClung, filed a response on behalf of the child also in support of the circuit court's order. Petitioner filed a reply. On appeal, petitioner argues that the circuit court erred in terminating her guardianship rights when (1) insufficient evidence was presented at the dispositional hearing to support termination, (2) the DHHR failed to provide an improvement period in good faith, and (3) visitation between petitioner and the child was not enforced.

This Court has considered the parties' briefs and the record on appeal. The facts and legal arguments are adequately presented, and the decisional process would not be significantly aided by oral argument. Upon consideration of the standard of review, the briefs, and the record presented, the Court finds no substantial question of law and no prejudicial error. For these reasons, a memorandum decision affirming the circuit court's order is appropriate under Rule 21 of the Rules of Appellate Procedure.

Prior to the initiation of the instant proceedings, the DHHR filed a child abuse and neglect petition against the child's biological mother and the unknown father. Their parental rights were terminated in 2015, and the child was placed in the permanent legal guardianship of the maternal grandparents, petitioner and S.P.-2.

---

[1]Consistent with our long-standing practice in cases with sensitive facts, we use initials where necessary to protect the identities of those involved in this case. *See In re K.H.*, 235 W. Va. 254, 773 S.E.2d 20 (2015); *Melinda H. v. William R. II*, 230 W. Va. 731, 742 S.E.2d 419 (2013); *State v. Brandon B.*, 218 W. Va. 324, 624 S.E.2d 761 (2005); *State v. Edward Charles L.*, 183 W. Va. 641, 398 S.E.2d 123 (1990). Additionally, because the child and her grandfather share the same initials, we will refer to them as S.P.-1 and S.P.-2, respectively, throughout this memorandum decision.

In April of 2020, the DHHR filed the instant petition against petitioner and the grandfather. The DHHR alleged that it received a referral indicating that the child, then twelve years old, went to a friend's house and refused to return to petitioner's home due to petitioner and the grandfather's drug abuse, lack of power in the home, and the grandfather's threats to beat the child. A Child Protective Services ("CPS") worker responded to petitioner's home and found it to be in deplorable condition with trash piled everywhere and no working utilities. Petitioner stated that the family usually used a generator to provide electricity to the home but that they had run out of gasoline to power the generator. Petitioner admitted to using marijuana "every now and then" and acknowledged that she and the grandfather previously abused methamphetamine but denied current methamphetamine abuse. Petitioner informed the CPS worker that the child was staying with the mother, whose parental rights had been terminated, and stated that she did not know whether the mother was still in active addiction because "she does not get in [the mother's] business." Petitioner initially refused to give the CPS worker any information regarding the child's location or the mother's contact information, prompting the worker to contact law enforcement officers. When an officer arrived, he informed the worker that he had been to the home on prior occasions due to outstanding warrants for arrest of petitioner's adult son who was living in the home and that the home had always been in poor condition. Petitioner admitted that her son lived in the home and abused drugs, and she confirmed that she and the grandfather threatened to beat the child but did not follow through with the threats.

The CPS worker located the child at the mother's home, and the child reported that she was afraid to return to petitioner's home. The child disclosed that she frequently stayed at her mother's home and that her grandparents and uncle abused marijuana. The worker also spoke to the child's mother, who admitted that her parental rights to the child had previously been terminated and that she had a long history of abusing drugs such as opiates and methamphetamine. The mother reported to the worker that her brother who lived in the home with petitioner actively abused heroin and that petitioner and the grandfather previously abused methamphetamine, although the mother was unsure whether they currently abused the substance. Lastly, the CPS worker spoke with C.S., the grandfather's sister, who reported that both petitioner and the grandfather abused methamphetamine and frequently did not have proper utilities for their home. In sum, the DHHR alleged that petitioner failed to protect the child from the mother, drugs and addicts, and criminal activity; failed to provide a clean, safe, and stable home; and had substance abuse issues which prevented her from being an appropriate guardian for the child.

After several continuances, the court held an adjudicatory hearing in February of 2021. The DHHR presented the testimony of the CPS worker who stated that the home was in deplorable condition and described trash, dirty dishes, and moldy food found throughout the home. The worker stated that the child's bed was stacked with garbage and clothes and that it was difficult to walk through the home. The worker opined that petitioner was under the influence at the time of the visit, that her speech was slurred, and that she presented with "meth sores" on her face. The worker also testified that the child disclosed that the grandparents threatened to beat her and that the grandfather had thrown cans of food at her head before. According to the worker, she placed the child with C.S., but had to remove her because petitioner and the grandfather showed up at C.S.'s home and threatened C.S. A second CPS worker testified that the child reported having to clean up used needles from her uncle's drug abuse.

Petitioner testified that the home was cluttered because she had broken her foot and had a splint, so she was unable to clean. She also testified that she was selling her deceased mother's dishes and furniture, which added to the clutter. Petitioner admitted that she informed the CPS worker that she used marijuana but denied abusing methamphetamine at the time and claimed the sores were due to psoriasis. Petitioner acknowledged that she allowed the child to see the biological mother and that she had been granted the discretion to allow such visitation when the child was placed in her guardianship.

By order entered on April 27, 2021, the court adjudicated petitioner as an abusing parent/guardian/custodian and granted her a post-adjudicatory improvement period, the terms and conditions of which required her to submit to random drug screens, obtain and maintain suitable housing, and participate in supervised visitation with the child, among other things.[2]

The court held a review hearing in July of 2021. Petitioner failed to attend but counsel appeared on her behalf. A CPS worker testified that petitioner was complying with parenting and adult life skills classes and had begun to clean the home but refused to submit to drug screens. The worker explained that she offered to personally deliver the drug screen packet and a bus pass, but that petitioner refused and claimed that her health issues prevented her from traveling back and forth to drug screens. The worker further stated that although petitioner was compliant with in-home parenting and adult life skills classes when she attended, she missed at least four sessions. According to the worker, the child refused to participate in any visitation with petitioner. Due to petitioner's refusal to submit to drug screens and her failure to properly clean the home in nearly five months, the worker recommended that petitioner's improvement period be terminated. At the conclusion of the hearing, the court allowed the improvement period to continue and ordered the DHHR to provide in-home drug testing to petitioner. Further, the court acknowledged the child's refusal to visit with petitioner and stated that it would take the issue under advisement in conjunction with petitioner's participation in her improvement period.

In October of 2021, the court held a dispositional hearing. On behalf of the DHHR, a CPS worker recommended the termination of petitioner's guardianship rights. According to the CPS worker, petitioner failed to comply with services, despite accommodations made for her health conditions. The worker testified that in-home drug testing and services were made available to petitioner and that she refused to comply. The worker indicated that when another CPS worker attempted to visit the home over the summer, petitioner was locked out of the home and living with a neighbor. Further, given petitioner's health situation, the worker opined that petitioner would be unable to properly care for the child's needs. The worker stated that the child refused to visit with petitioner, did not want to return to petitioner's care, and was thriving in her foster placement. Also, the child was failing nearly all subjects when removed from petitioner's home but had improved her grades to nearly a 4.0 grade point average while in her foster family's care.

---

[2]West Virginia Code § 49-1-201 defines an "abusing parent" as "a parent, *guardian*, or other custodian . . . whose conduct has been adjudicated by the court to constitute child abuse or neglect as alleged in the petition charging child abuse or neglect." (Emphasis added.)

Petitioner testified and denied that she had been living with her neighbor or that she was locked out of her home for longer than a day. Petitioner stated that she had electricity in the home powered through a generator and that the home was clean. Petitioner further stated that she was not abusing drugs but on cross-examination admitted to using marijuana. Petitioner admitted that the home in which she resided was owned by her adult son and that he was addicted to heroin.

At the conclusion of the hearing, the court found that petitioner admitted to continued drug abuse and, therefore, could not produce clean drug screens had she submitted to them. The court also noted that petitioner knowingly allowed her son, who was in active addiction, to live in the home with the child. Further, the court considered the child's disclosures throughout the proceedings and the fact that the child did not want to return to petitioner, finding that she was old enough to express her wishes. Accordingly, the court terminated petitioner's guardianship rights upon finding that there was no reasonable likelihood that petitioner could correct the conditions of abuse and/or neglect in the near future and that termination was necessary for the child's welfare. Petitioner appeals the circuit court's October 26, 2021, dispositional order.[3]

The Court has previously established the following standard of review in cases such as this:

> "Although conclusions of law reached by a circuit court are subject to *de novo* review, when an action, such as an abuse and neglect case, is tried upon the facts without a jury, the circuit court shall make a determination based upon the evidence and shall make findings of fact and conclusions of law as to whether such child is abused or neglected. These findings shall not be set aside by a reviewing court unless clearly erroneous. A finding is clearly erroneous when, although there is evidence to support the finding, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed. However, a reviewing court may not overturn a finding simply because it would have decided the case differently, and it must affirm a finding if the circuit court's account of the evidence is plausible in light of the record viewed in its entirety." Syl. Pt. 1, *In Interest of Tiffany Marie S.*, 196 W.Va. 223, 470 S.E.2d 177 (1996).

Syl. Pt. 1, *In re Cecil T.*, 228 W. Va. 89, 717 S.E.2d 873 (2011).

On appeal, petitioner argues that the circuit court erred in terminating her guardianship rights based upon insufficient evidence. According to petitioner, the DHHR failed to demonstrate that she refused to submit to drug screens or failed to clean her home. Moreover, the DHHR's witness admitted that petitioner complied with parenting and adult life skills classes. The DHHR "never outlined a workable plan of services, crafted with [p]etitioner's unique health characteristics in mind" and denied petitioner visitation with the child based upon the child's purported refusal to have contact with petitioner. Further, petitioner argues that simply providing her with a bus pass was insufficient and that the DHHR refused to offer alternatives "to time-consuming in-person drug screens at the location of the DHHR's choice." In sum, petitioner argues that the DHHR failed to submit any evidence that she did not remedy the conditions of abuse and

---

[3]The grandfather's guardianship rights were also terminated below. The permanency plan for the child is adoption by her foster family.

neglect, wrongfully prevented her from visiting with the child, failed to provide meaningful services to her, and relied on unsupported assertions to argue for the termination of her guardianship rights.

We find no error in the termination of petitioner's guardianship rights. West Virginia Code § 49-4-604(c)(6) provides that circuit courts are to terminate parental, custodial, and guardianship rights upon finding that there is "no reasonable likelihood that the conditions of neglect or abuse can be substantially corrected in the near future" and that termination is necessary for the children's welfare. West Virginia Code § 49-4-604(d) provides that a circuit court may find that there is no reasonable likelihood that the conditions of abuse and neglect can be substantially corrected when the abusing parent has "demonstrated an inadequate capacity to solve the problems of abuse or neglect on [his or her] own or with help."

Here, petitioner demonstrated an inadequate capacity to solve the problems of abuse and neglect on her own or with help. The record establishes that petitioner refused to participate in drug screens despite the fact that they were offered in her home to accommodate her alleged health conditions. While petitioner argues that the DHHR was unable to establish that she refused to submit to drug screens, she unconvincingly relies on the argument that the testifying CPS worker lacked personal knowledge of the drug screens. The record establishes that the testifying CPS worker was assigned to the case three weeks before the dispositional hearing; however, the worker's testimony that petitioner refused to submit to drug screens was based upon her review of the DHHR's records of the case. Accordingly, while the worker lacked personal knowledge of the attempts to drug screen petitioner, the worker reviewed the case records and testified based upon her knowledge of the same. Regardless, petitioner admitted to continuing to abuse marijuana during the proceedings below. The court found that petitioner could not have submitted a negative drug screen based upon petitioner's admissions to marijuana use, and that her continued drug use was sufficient to terminate petitioner's improvement period.

While petitioner argues that the DHHR and circuit court wrongfully held petitioner's extensive health conditions against her, the circuit court had the discretion to consider petitioner's health in the context of her ability to care for the child. The record is undisputed that petitioner suffered from significant health concerns that rendered her somewhat immobile. Indeed, petitioner was unable to attend the dispositional hearing in person as she allegedly suffered a breathing attack. The CPS worker testified that the DHHR had concerns about petitioner's ability to safely parent the child given petitioner's poor health and questioned whether petitioner would be able to take the child to necessary doctor's appointments given that petitioner lacked transportation. Moreover, contrary to petitioner's claims, the DHHR modified services to accommodate petitioner's health issues by providing in-home parenting and adult life skills classes and in-home drug screens.

This Court has held that

"[t]ermination of parental rights, the most drastic remedy under the statutory provision covering the disposition of neglected children, [West Virginia Code § 49-4-604] . . . may be employed without the use of intervening less restrictive alternatives when it is found that there is no reasonable likelihood under [West Virginia Code § 49-4-604(d)] . . . that conditions of neglect or abuse can be

substantially corrected." Syllabus point 2, *In re R.J.M.*, 164 W.Va. 496, 266 S.E.2d 114 (1980).

Syl. Pt. 5, *In re Kristin Y.*, 227 W. Va. 558, 712 S.E.2d 55 (2011). Given petitioner's failure to adequately participate in services accommodated to fit her needs and her continued drug abuse, we find no error in the circuit court's termination of her guardianship rights.

Petitioner next argues that reunification with the child could not have occurred without visitation. The process of reunification is often a gradual transition with increased visits taking place prior to returning the child permanently to the home. Petitioner argues that to suggest that visits are at the discretion of the child would mean that abuse and neglect cases are decided by children and not adults. Petitioner admits to neglecting the child and understands the child's hesitance to re-establish contact with her but contends that "there are mechanisms to secure the safety and comfort of the [c]hild during the visits." Visits and contacts could have been supervised and "held on neutral grounds" or in a therapeutic setting, or the DHHR could have offered family counseling or therapy. In petitioner's opinion, to grant her an improvement period aimed at family reunification without affording visitation was meaningless.

We find that petitioner's assertions are simply insufficient to establish an error by the circuit court in regard to disposition, given petitioner's failure to fully comply with the services offered below. Importantly, petitioner's argument fails to address how visitation with the child would have made a difference given petitioner's failure to comply with the requirements of her improvement period, such as her failure to submit to drug screens or failure to remain drug free. Moreover, there is nothing in the record to indicate that, absent her participation in these remedial services, petitioner's visitation with the child would have been in the child's best interests. Indeed, the child repeatedly refused visitation with petitioner, stated that she wanted no contact with petitioner, threatened to run away if returned to petitioner's care, and claimed the only way she would visit with petitioner were if she were handcuffed and placed in a police car. "'In a contest involving the custody of an infant the welfare of the child is the polar star by which the discretion of the court will be guided.' Syl. Pt. 2, *State ex rel. Lipscomb v. Joplin*, 131 W.Va. 302, 47 S.E.2d 221 (1948)." Syl. Pt. 3, *In re S.W.*, 233 W. Va. 91, 755 S.E.2d 8 (2014). Given that the circuit court determined that the child was of sufficient maturity to express her wishes regarding visitation and disposition, and the evidence established that petitioner was unsuccessful in complying with services designed to remedy the conditions of abuse, we find no error in petitioner's lack of visitation with the children during the proceedings.

For the foregoing reasons, we find no error in the decision of the circuit court, and its October 26, 2021, order is hereby affirmed.

Affirmed.

**ISSUED**: May 12, 2022

6

**CONCURRED IN BY**:

Chief Justice John A. Hutchison
Justice Elizabeth D. Walker
Justice Tim Armstead
Justice William R. Wooton
Justice C. Haley Bunn