**STATE OF WEST VIRGINIA**
**SUPREME COURT OF APPEALS**

*In re* **R.R., M.R., B.H., T.H., and E.H.**

**No. 21-0865** (Webster County 20-JA-39, 20-JA-40, 20-JA-41, 20-JA-42, and 20-JA-43)

**MEMORANDUM DECISION**

Petitioner Father K.H., a self-represented litigant, appeals the Circuit Court of Webster County's September 21, 2021, order returning R.R., M.R., B.H., T.H., and E.H. to his care and dismissing the matter.[1] The West Virginia Department of Health and Human Resources ("DHHR"), by counsel Patrick Morrisey and Katherine A. Campbell, filed a response in support of the circuit court's order and a supplemental appendix. The guardian ad litem ("guardian"), Mary Elizabeth Snead, filed a response on behalf of the children also in support of the circuit court's order. Petitioner filed a reply. On appeal, petitioner argues that the circuit court erred in (1) accepting a petition without all legal requirements; (2) failing to require that the DHHR provide services; (3) appointing only one guardian for all of the children; (4) finding that imminent danger existed to remove the children; (5) in finding that the DHHR made reasonable efforts to avoid the removal of the children; (6) failing to require case plans; (7) failing to require proper multidisciplinary team meetings; and (8) adjudicating him as an abusing parent.[2]

This Court has considered the parties' briefs and the record on appeal. The facts and legal arguments are adequately presented, and the decisional process would not be significantly aided by oral argument. Upon consideration of the standard of review, the briefs, and the record presented, the Court finds no substantial question of law and no prejudicial error. For these reasons, a memorandum decision affirming the circuit court's order is appropriate under Rule 21 of the Rules of Appellate Procedure.

---

[1]Consistent with our long-standing practice in cases with sensitive facts, we use initials where necessary to protect the identities of those involved in this case. *See In re K.H.*, 235 W. Va. 254, 773 S.E.2d 20 (2015); *Melinda H. v. William R. II*, 230 W. Va. 731, 742 S.E.2d 419 (2013); *State v. Brandon B.*, 218 W. Va. 324, 624 S.E.2d 761 (2005); *State v. Edward Charles L.*, 183 W. Va. 641, 398 S.E.2d 123 (1990).

[2]On appeal, petitioner raises twenty total assignments of error. We address some of the arguments together. Although petitioner is a self-represented litigant on appeal, he was represented by counsel during the proceedings below.

The DHHR filed a child abuse and neglect petition in August of 2020 alleging that petitioner and the mother emotionally and physically abused the children. The DHHR alleged it received a referral earlier that month that petitioner's eldest child, A.H., who has reached the age of majority and is not at issue in this appeal, filed an emancipation petition in Webster County. After receiving the petition, the circuit court ordered the DHHR to conduct an investigation into the matter based upon the contents of the emancipation petition. At the time of the filing of the emancipation petition, petitioner contacted the Webster County Sheriff and inquired as to whether he could require A.H. to return home if she was reported as a runaway child. The petition detailed several instances of physical and/or emotional abuse as set forth more fully below.

Later that month, the circuit court held a hearing on the filing of the petition during which the DHHR presented testimony consistent with the allegations in the petition. A Child Protective Services ("CPS") supervisor testified that she had substantiated abuse in the parents' home but filed a non-emergency petition given that there were no physical altercations between petitioner and the mother and that most of the incidents in their home were verbal arguments. Rather, many issues in the home stemmed from a deterioration in petitioner's relationship with A.H. Specifically, the worker testified that A.H. was residing with her maternal step-grandmother, S.R., as a result of the tension between the parents and A.H. The worker noted that petitioner had threatened A.H. when S.R. accompanied her to the parents' home to retrieve some of her personal items. Specifically, the worker noted that petitioner threatened to ram his fist down A.H.'s throat. The worker also noted an incident where A.H. was holding a cigarette in a picture on social media. Upon seeing the picture, the worker explained that petitioner mistook the cigarette for marijuana and grabbed A.H. by her face, shook her, and the child's head hit the back of the porch door.

The worker further detailed another incident surrounding petitioner's threats to kill the family dog. During that incident, the mother pushed A.H., A.H. drew back her first to strike the mother, and the mother drew back her fist in defense. The worker stated that neither A.H. nor the mother hit each other during the incident. The worker also testified that the children reported they mostly fended for themselves when it came to food access inside the home. The worker testified that she believed that services placed in the home would be appropriate in the case since the children were not afraid of petitioner or the mother. However, under further questioning by the circuit court and prosecutor, the worker admitted that she did not believe that A.H. would be safe in the parents' home. The worker also noted that A.H. stated she was afraid of returning to the parents' home because of potential retribution against her from the parents due to the CPS investigation and petition. As a result, the circuit court found that the children were in imminent danger, found that providing services was insufficient to provide for the children's safety, and removed the children from the home.

The circuit court held a preliminary hearing in September of 2020 during which the CPS worker again testified. The worker stated that she interviewed the children and relayed a number of incidents that occurred in the parents' home. In addition to the prior incidents, the worker testified that on one occasion, petitioner damaged one of the children's video game consoles. The worker also detailed an incident at a local pool where M.R. uttered a curse word and the parents instructed him to leave the pool. The worker stated that the child was then forced to sit for four hours in direct sunlight as punishment. However, the worker admitted that nature of M.R.'s punishment was disputed during her interviews. The court further questioned the CPS worker.

2

The Court: And isn't it true that prior to this [c]ourt entering the order of removal, we had an evidentiary hearing and you testified that you thought it was unsafe for [A.H.] to return to the home?

CPS Worker: I did say [A.H.], your Honor, and I also recall stating that I didn't believe it would be physical but verbally or emotionally it would. And that's why, originally, I wanted to put parenting and counseling services in to try to preserve the family.

The Court: Well, isn't it also true that [A.H.] has expressed to you, and expressed in her petition, fear for other children in the home, and the safety of those children?

CPS Worker: She did.

The worker later testified upon questioning by the court that A.H. was fearful regarding her return to the home. However, none of the other children had expressed any fear about returning to the parents' home.

Next, the mother testified on her own behalf at the preliminary hearing. She claimed that during the family dog incident she never shoved A.H. but that she and the child simply ran into each other by accident. The mother also explained the pool incident with M.R. and denied that he was forced to sit in the direct sunlight for four hours as punishment. Rather, the mother explained that M.R. sat under the shade of trees for twenty to thirty minutes after being made to exit the pool. The mother acknowledged that petitioner damaged the children's video game console during an incident but stated that he only broke the item's cover and that the system was still operational.

After considering the evidence at the preliminary hearing, the court found that the children were in imminent danger. The court found that if there was risk of danger to one child inside the home, then all of the children in the home were at risk. The court further ordered that the parents participate in psychological evaluations.

The circuit court held an adjudicatory hearing in November of 2020 during which the parents stipulated to many of the allegations set forth in the child abuse and neglect petition. The court questioned petitioner as to the nature of his stipulation and found that he stipulated voluntarily, and without any promise of anything in return for his admissions. The court found that by entering his admissions, petitioner "understands that there will be no hearing of any kind regarding the factual allegations in the [p]etition" and that "he cannot later challenge the factual basis for the [p]etition or any adjudication of abuse and neglect made by th[e] [c]ourt upon said facts, even on appeal." As a result, the court accepted petitioner's stipulation and adjudicated him and the mother as abusing parents. Later that month, the parents filed a joint motion for post-adjudicatory improvement periods, which the court eventually granted.

Following adjudication, the proceedings continued for several months, during which time petitioner was successful in his post-adjudicatory improvement period. The court held a final dispositional hearing in August of 2021 during which it interviewed the children and noted that

3

the children "had lots of issues." The court found that therapy was greatly helping the children but that the children still had concerns with the parents. Nevertheless, the court adopted a parenting plan proposed by the DHHR which returned the children to petitioner's custody. The court then dismissed the case as permanency for the children had been achieved.[3] It is from the September 21, 2021, final permanency hearing order and order dismissing the case that petitioner appeals.

The Court has previously established the following standard of review:

> "Although conclusions of law reached by a circuit court are subject to *de novo* review, when an action, such as an abuse and neglect case, is tried upon the facts without a jury, the circuit court shall make a determination based upon the evidence and shall make findings of fact and conclusions of law as to whether such child is abused or neglected. These findings shall not be set aside by a reviewing court unless clearly erroneous. A finding is clearly erroneous when, although there is evidence to support the finding, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed. However, a reviewing court may not overturn a finding simply because it would have decided the case differently, and it must affirm a finding if the circuit court's account of the evidence is plausible in light of the record viewed in its entirety." Syl. Pt. 1, *In Interest of Tiffany Marie S.*, 196 W.Va. 223, 470 S.E.2d 177 (1996).

Syl. Pt. 1, *In re Cecil T.*, 228 W. Va. 89, 717 S.E.2d 873 (2011).

On appeal, petitioner alleges several errors regarding his adjudication. However, petitioner stipulated to his adjudication and, thus, is not entitled to challenge the sufficiency of his adjudication on appeal. We have previously held that "[a] litigant may not silently acquiesce to an alleged error, or actively contribute to such error, and then raise that error as a reason for reversal on appeal." Syl. Pt. 1, *Maples v. W. Va. Dep't of Com., Div. of Parks & Recreation*, 197 W. Va. 318, 319, 475 S.E.2d 410, 411 (1996). The record in this matter is clear that petitioner voluntarily stipulated to the adjudication against him. Moreover, petitioner did not object to his adjudication as an abusing parent. We have long held that, "when nonjurisdictional questions have not been decided at the trial court level and are then first raised before this Court, they will not be considered on appeal." *Shaffer v. Acme Limestone Co., Inc.*, 206 W.Va. 333, 349 n. 20, 524 S.E.2d 688, 704 n. 20 (1999)." *Noble v. W. Va. Dep't of Motor Vehicles*, 223 W. Va. 818, 821, 679 S.E.2d 650, 653 (2009). In fact, the record shows that the court inquired of petitioner as to his understanding of the admissions and understanding of the consequences of said admissions. Petitioner answered the court's inquiry in the affirmative. Based on the evidence presented below, the court found that petitioner made his admissions "voluntarily and freely" and understood the consequences of said admissions, including the inability to challenge his adjudication on appeal. Accordingly, we find that the court did not err in adjudicating petitioner as an abusing parent.

Further, petitioner failed to challenge the sufficiency of the allegations against him as contained in the petition. Indeed, the record is not only devoid of any attempt by petitioner to dismiss the petition for alleged legal deficiencies, but, as addressed above, petitioner ultimately

---

[3]The mother also retained custody of the children pursuant to the final permanency hearing order. As such, the children have achieved permanency in the parents' care.

stipulated to the allegations against him as the basis for his agreed adjudication. On appeal, petitioner raises arguments concerning his lack of notice as to the allegations against him and, confusingly, asserts that he was unable to rebut the DHHR's allegations because of a lack of specificity, while ignoring the fact that he ultimately chose to simply stipulate to the allegations in the petition. Because petitioner failed to raise any objection or challenge to the petition itself and, ultimately, stipulated that the facts contained therein were sufficient to serve as a basis for his adjudication, he has also waived his ability to challenge the petition's sufficiency on appeal.

Next, petitioner argues that the circuit court erred in finding that the DHHR made reasonable efforts to prevent the removal of the children from the home.[4] Petitioner avers that the circuit court's finding is undermined by a CPS worker's testimony during an August of 2020 hearing on the petition wherein she stated that she "ha[d] not put any [services] in yet." However, petitioner ignores the circuit court's finding that simply providing services was insufficient at the beginning of the proceedings to ensure the safety of the children. Instead, the court found that the children were in imminent danger in the home and ordered the removal of the children. The circuit court, having reviewed the facts of the matter, found the children's removal to be in their best interests. "'In a contest involving the custody of an infant[,] the welfare of the child is the polar star by which the discretion of the court will be guided.' Syl. Pt. 2, *State ex rel. Lipscomb v. Joplin*, 131 W.Va. 302, 47 S.E.2d 221 (1948)." Syl. Pt. 3, *In re S.W.*, 233 W. Va. 91, 755 S.E.2d 8 (2014).

Next, petitioner presents several assignments of error arguing that the circuit court did not properly appoint nor supervise the guardian, nor did it timely hold hearings and consider the best interests of all of the children. We find that petitioner's arguments are without merit. We have explained that

> [i]n a proceeding to terminate parental rights . . . a guardian *ad litem* . . . must exercise reasonable diligence in carrying out the responsibility of protecting the rights of the children. This duty includes exercising the appellate rights of the children, if, in the reasonable judgment of the guardian *ad litem,* an appeal is necessary.

Syl. Pt. 3, in part, *In re Scottie D.*, 185 W. Va. 191, 406 S.E.2d 214 (1991). We have also explained that "the best interests of the child is the polar star by which decisions must be made which affect children." *Michael K.T. v. Tina L.T.,* 182 W. Va. 399, 405, 387 S.E.2d 866, 872 (1989).

Here, the record does not indicate any error with the guardian ad litem's representation of all the children. The record shows that no motions were made for separate guardians ad litem to be appointed for each child and that the appointed guardian ad litem was adequately involved with each child as she worked toward each child's best interests. The fact that the guardian represented all children does not, in and of itself, present a conflict of interest. While petitioner claims that the children had differing interests than A.H. and were denied the right to be heard at hearings, he provides no evidence to support his claims and makes no citations to the record, in violation of

---

[4]West Virginia Code § 49-4-602(a)(4)(B) provides, in part, that "[t]he initial order directing custody . . . shall state: [w]hether or not the department made reasonable efforts to preserve the family and prevent the placement or that the emergency situation made those efforts unreasonable or impossible."

Rule 10(c)(7) of the Rules of Appellate Procedure. Moreover, there is no evidence on the record that the guardian failed to carry out her responsibilities of protecting any of the children's rights. Indeed, the circuit court found, in multiple orders, that the guardian continued to take actions in the best interests of the children throughout the proceedings. As such, we find no error.

Further, petitioner contends that the circuit court did not properly time the hearings as outlined by the law and that his due process rights were violated by the unreasonable delays below. According to petitioner, "the timelines set by the court in our case were not to the rules of procedure." This argument is simply unsupported by the record. While it is true that some hearings in this matter were continued, including a continuation due to the COVID-19 pandemic and exposure in the courthouse, the record shows that petitioner's services continued throughout those periods, and that the court continued to hold required hearings. In short, petitioner was never deprived of time to show compliance with the terms and conditions of his improvement period, which he eventually successfully completed, resulting in the return of the children to his custody. Instead, hearings had to be rescheduled to accommodate the parties' safety and other scheduling issues. Most importantly, petitioner points to no evidence in the record that any delays in the proceedings prejudiced him during the proceedings. As such, he is entitled to no relief.

Next, petitioner argues that the circuit court erred in finding probable cause that the children were in imminent danger and that there were no reasonable alternatives to their removal. According to petitioner, there were no allegations or testimony of any imminent danger to the physical wellbeing of the children. Petitioner acknowledges that a DHHR worker testified as to a few separate incidents which the court relied on regarding the parents and their eldest child, A.H., but maintains that the worker stated she did not believe the children were in danger. As such, petitioner contends that these incidents were insufficient for a factual finding of imminent physical danger of the children. We find, however, that these arguments do not entitle petitioner to relief.

According to West Virginia Code § 49-4-602(a)(1), the circuit court may order the removal of a child if it finds that "there exists imminent danger to the physical well-being of the child" and "[t]here are no reasonably available alternatives to removal of the child, including, but not limited to, the provision of medical, psychiatric, psychological or homemaking services in the child's present custody." West Virginia Code § 49-1-201 defines "[i]mminent danger to the physical well-being of the child" to mean "an emergency situation in which the welfare or the life of the child is threatened." This provision further delineates the following threatening conditions: nonaccidental trauma, physical abuse, nutritional and medical neglect, abandonment, substantial emotional abuse, the sale of a child, alcohol or drug impaired parenting, and "[a]ny other condition that threatens the health, life or safety of any child in the home." W. Va. Code § 49-1-201.

Further, pursuant to W. Va. Code § 49-4-602(a)(3),

> [i]n a case where there is more than one child in the home, or in the temporary care, custody or control of the alleged offending parent, the petition shall so state. Notwithstanding the fact that the allegations of abuse or neglect may pertain to less than all of those children, each child in the home for whom relief is sought shall be made a party to the proceeding. Even though the acts of abuse or neglect alleged in the petition were not directed against a specific child who is

6

named in the petition, the court shall order the removal of the child, pending final disposition, if it finds that there exists imminent danger to the physical well-being of the child and a lack of reasonable available alternatives to removal.

Here, the record shows that a hearing on the abuse and neglect petition took place in August of 2020 during which evidence demonstrated the children were unsafe in the parents' home. Moreover, the court again found there was an imminent danger to the children during a contested preliminary hearing the following month. While petitioner is correct that the DHHR worker testified initially that she did not believe that the children were in danger, she later clarified that she thought the parents' home was unsafe for A.H. The worker stated that she anticipated that the parents' home could be "verbally or emotionally" unsafe for the child. Indeed, the instant petition was filed after A.H. left the parents' home and filed an emancipation petition, leading to a CPS investigation.

Once the circuit court made a finding of abuse against A.H., pursuant to W. Va. Code § 49-4-602(a)(3), it "shall order the removal of the child[ren], pending final disposition, if it finds that there exists imminent danger to the physical well-being of the child." Petitioner argues on appeal that A.H. was no longer residing in his residence and, therefore, she was not in imminent danger in the residence. This argument is refuted by the record. A.H. had been residing with her grandmother for a few weeks at the time of the abuse and neglect petition. However, the grandmother did not have legal guardianship or custody of the child, who was still a minor at the time. Further, petitioner made inquiries to the Webster County Sheriff about whether law enforcement officials could mandate A.H. to return to the parents' home. In light of the evidence that A.H. was in imminent danger in the parents' home, we find no error in the circuit court finding probable cause that all of the children were in imminent danger inside the home nor in its finding that there were no reasonable alternatives to their removal.

Finally, petitioner argues that the circuit court erred with its administration and acceptance of case plans and holding MDT meetings. Specifically, petitioner argues that the DHHR did not offer a completed family case plan or a timeline of when to expect a return of the children to his home. Petitioner maintains that he was "never included in a case plan, goal set" and questions the existence of a case plan altogether, stating it "was never done in accordance with the laws . . . [o]r actually done at all to my knowledge." As this Court has explained,

> "[t]he purpose of the family case plan as set out in W.Va. Code [§ 49-4-408(a)] . . . is to clearly set forth an organized, realistic method of identifying family problems and the logical steps to be used in resolving or lessening these problems." Syl. Pt. 5, *State ex rel. Dep't of Human Services v. Cheryl M.*, 177 W.Va. 688, 356 S.E.2d 181 (1987).

Syl. Pt. 2, *In re Desarae M.*, 214 W. Va. 657, 591 S.E.2d 215 (2003).

However, a review of the final dispositional hearing order shows that the circuit court referred to the existence of a case plan, well after petitioner was granted and completed a post-adjudicatory improvement period. Additionally, there is no record of any objection by petitioner or his counsel to the case plans that he now claims were inadequate or nonexistent. "'Our general

7

rule is that nonjurisdictional questions . . . raised for the first time on appeal, will not be considered.' *Shaffer v. Acme Limestone Co., Inc.*, 206 W.Va. 333, 349 n.20, 524 S.E.2d 688, 704 n.20 (1999)." *Noble v. W. Va. Dep't of Motor Vehicles*, 223 W. Va. at 821, 679 S.E.2d at 653. Therefore, this argument will not be considered on appeal.

For the foregoing reasons, we find no error in the decision of the circuit court, and its September 21, 2021, order is hereby affirmed.

Affirmed.

**ISSUED**: May 12, 2022

**CONCURRED IN BY**:

Chief Justice John A. Hutchison
Justice Elizabeth D. Walker
Justice Tim Armstead
Justice William R. Wooton
Justice C. Haley Bunn